USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 95-2234 ALEXANDER KATZ, Plaintiff, Appellant, v. CITY METAL CO.,INC., VERDIG DEUTCHE NICKLE, AMERICA, INC., MILTON WILCOX, AND PETER BRUNO, Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ronald R. Lagueux, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge.  _____________ ____________________ Robert E. Savage for appellant. ________________ Michael P. DeFanti, with whom Hinckley, Allen & Snyder was on ___________________ __________________________ brief for appellees. ____________________ July 2, 1996 ____________________ BOWNES, Senior Circuit Judge. Plaintiff/Appellant BOWNES, Senior Circuit Judge. ____________________ Alexander Katz ("Katz") sued his former employer, Defendant/Appellee City Metal Co. ("City Metal"), its President Milton Wilcox ("Wilcox") and its Chief Executive Officer Peter Bruno ("Bruno"), under the Americans with Disabilities Act, 42 U.S.C. 12101 et seq. (1995) ("ADA"), __ ____ and the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws 28-5-1 et seq. (1995), claiming that City Metal __ ____ unlawfully discriminated against him by discharging him because of a disability. See 42 U.S.C. 12112(a); R.I. Gen. ___ Laws 28-5-6, 5-7. At the close of Katz's case, the district court granted City Metal's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a)(1), finding that Katz had not presented evidence sufficient to show that he had a "disability" as defined under the ADA.1 Katz appeals. We reverse and remand for a new trial. I. I. __ BACKGROUND BACKGROUND __________ City Metal is a corporation that buys and sells scrap metal, employing more than fifteen employees. Katz was hired by City Metal on July 1, 1991. On September 27, 1992, he suffered a heart attack. Five weeks later, Wilcox  ____________________ 1. Because the definition of "handicap" under the Rhode Island law is substantially identical to the ADA's definition of "disability," we will not separately address the state law claim. Compare 42 U.S.C. 12102(2) with R.I. Gen. Law 28- _______ ____ 5-6(9). -2- 2 telephoned Katz and told him his employment was terminated. This lawsuit followed, and ended at the close of Katz's case in a judgment as a matter of law for City Metal. "We review the grant of a Rule 50(a) motion for judgment as a matter of law de novo, under the same standards __ ____ as the district court." Andrade v. Jamestown Housing Auth., ___________________________________ 82 F.3d 1179, 1186 (1st Cir. 1996). Accordingly, we "examine the evidence and all fair inferences in the light most favorable to the plaintiff [and] may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." Richmond Steel, Inc. _____________________ v. Puerto Rican American Ins. Co., 954 F.2d 19, 22 (1st Cir. _________________________________ 1992) (internal quotation marks and citations omitted). To warrant submission of an issue to the jury, the plaintiff must present "more than a mere scintilla" of evidence and may not rely on conjecture or speculation. Id. "[T]he evidence ___ offered must make the existence of the fact to be inferred more probable than its nonexistence." Resare v. Raytheon ___________________ Co., 981 F.2d 32, 34 (1st Cir. 1992) (internal quotation ___ marks and citations omitted). To affirm the withdrawal of any claim from the jury, we must find that, as a matter of law, the record would permit a reasonable jury to reach only one conclusion as to that issue. Richmond Steel, 954 F.2d at ______________ 22.  -3- 3 With this standard in mind we rehearse the evidence adduced by Katz.  The Trial Testimony The Trial Testimony ___________________ Katz testified as follows. City Metal hired him in July of 1991 as a scrap metal salesman because of his prior experience in the field. He was assigned various territories which he serviced by traveling in a company car. At the end of 1991, Bruno asked Katz to take an inside position in customer relations as a liaison between the company and its customers. Katz accepted and continued in that position until July of 1992. During that time Katz also helped to train Wilcox, who was new to the business, and trained other salesmen. In July of 1992, Katz, at his request, returned to being a salesman. Up until the time he was discharged, Katz did not receive any negative reports or comments about the quality of his performance and was not informed that his job was in jeopardy. On Sunday, September 27, 1992, while Katz was in Cleveland visiting his family, he had a heart attack and was taken by ambulance to the Cleveland Clinic. During his seven-day stay there, Katz underwent two angioplasty procedures and some testing, and was kept in cardiac intensive care. He was discharged from the hospital on Saturday, October 3, 1991, and telephoned Wilcox on the following Monday to explain the situation. Wilcox then sent -4- 4 Katz Rhode Island temporary disability application forms. Katz submitted them and received disability payments for six months, the maximum payable under Rhode Island law. After his discharge from the hospital, Katz had great difficulty breathing, even while sitting down, and was extremely limited in his ability to walk. After a few steps, he became short of breath and experienced chest pains, broke into sweats and became nauseous. It was necessary that he keep stress to a minimum.  Katz went to the company office on the Thursday afternoon following his hospital discharge for the purpose of discussing his return to work. Due to the effects of his heart attack, Katz was unable to walk to the company's office on the second floor. Wilcox therefore came down to Katz's car, where the two had a conversation. Katz asked about his customers and told Wilcox he wanted to return to work as soon as possible, even if it was initially in a limited capacity. Wilcox told him not to worry about his customers, and that the main thing was for Katz to get well. Katz stayed in Rhode Island for about a week after his conversation with Wilcox. The cold weather, however, restricted his breathing which, in turn, made walking even more difficult. Since Wilcox had told him that his first objective should be to get well, Katz decided to recuperate at his family's apartment in Miami, Florida. -5- 5 On Friday, the last working day of October, Wilcox telephoned Katz and told him that he was discharged. Katz called Wilcox the following Monday and offered to return to work on a part-time basis with a reduction in salary and to accept whatever accommodations the company would make. At the time of the trial in October of 1995, Katz still had some trouble breathing and walking. He was working, having obtained a job on February 17, 1995 (after a lengthy search beginning in January of 1993), selling bonds for the State of Israel. Katz also called Wilcox as a witness. He testified that Katz's brother called to tell him about the heart attack two days after it occurred, and that he never questioned that Katz had a heart attack. He testified that Katz looked tired when he met him in the parking lot, and that he told Katz that his main objective should be to recover. Wilcox testified, however, that he had decided to fire Katz on September 4, 1992 (prior to the heart attack), for failing to submit a weekly travel schedule as required, and that he had merely waited until the end of October to so inform Katz. Katz also called Bruno as a witness, who testified that he was instrumental in hiring Katz, but was not familiar with the circumstances of his termination. The Judgment As A Matter Of Law The Judgment As A Matter Of Law _______________________________ -6- 6 After Katz, Wilcox, and Bruno had testified, Katz's attorney informed the court that he had one more witness -- Katz's treating physician in Rhode Island -- whom he had subpoenaed for the following day. The court recessed until the following day, when Katz's attorney informed the court that the doctor had declined to appear in court until Friday, three days hence, and requested that he be permitted to present the doctor's testimony in rebuttal after the defendants' case. The court stated that it would deal with the issue when it arose and was not sure the doctor's testimony was "vital to the essence of your claim."  When asked to state its position on the matter, City Metal stated that it had received Katz's medical records and that it did not dispute that Katz suffered a heart attack or that it perceived that he suffered a heart attack, but that it did contest that Katz was actually disabled within the meaning of the ADA. At that point, the court stated that Katz could not prove that he was disabled without the testimony of his doctor, and Katz again requested either a continuance or that the doctor be permitted to testify in rebuttal. The court denied those requests and Katz rested. City Metal then moved for judgment as a matter of law, arguing that in order to prove a disability under the ADA and the Rhode Island Fair Employment Practices Act, Katz was required to show that the heart attack "severely -7- 7 restricted a basic life activity on a permanent and continuing basis," and that he had failed to do so because there had been no medical testimony that Katz was permanently impaired in a major life activity. In response, Katz argued that his testimony established that the heart attack resulted in hospitalization, and impaired his ability to breathe, walk, perform manual tasks, care for himself and work, and that the evidence therefore met each of the three alternative definitions of the term "disability" under the ADA -- that he had a physical impairment that substantially limited one or more major life activities, that he had a record of such an impairment, and that City Metal regarded him as having such an impairment. See 42 U.S.C. 12102(2). ___ The district court ruled as follows: The question is whether it produced a permanent disability that he can't perform his work. It's obvious he's a salesman, and he's still selling. . . . In order for the Plaintiff to recover in this case, the Plaintiff must make a showing that he has some type of permanent impairment, physical impairment in one or more of life's major activities. There's been no showing of that in this case. The only evidence is that he has a blocked artery that was opened up by balloon angioplasty. That does not show that he has a permanent disability or heart disease. I know. I've been there. I had a heart attack. People recover from heart attacks and go on with life's functions. I know, I've done it, and I had an artery that was -8- 8 completely blocked and not reopened. Because I went through a rehab program where I developed the collateral arteries to take over the function of that artery, now I can perform. I'm playing tennis. I'm doing aerobic exercises every other day. I can perform fully in my life's functions as a Judge, where there's a lot more stress than some other vocations. So I have personal experience in this. Now a judge can't put aside his personal experiences in life in deciding cases.  I have decided it as a matter of law. I have decided the Plaintiff failed to prove that he had a permanent disability resulting from his heart attack. II. II. DISCUSSION DISCUSSION __________ The district court erred in ruling that there was insufficient evidence of disability within the meaning of the ADA. We start with the words of the statute. The Americans with Disabilities Act is a federal civil rights statute, enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. 12101(b)(1). See also Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 671 ___ ____ __________________________________ (1st Cir. 1995). In the employment context, the ADA prohibits a "covered entity" (defined as "a person engaged in an industry affecting commerce who has 15 or more employees") from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, -9- 9 advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. 12112(a). To obtain relief under the Act, a plaintiff must prove three things. First, that he was disabled within the meaning of the Act. Second, that with or without reasonable accommodation he was able to perform the essential functions of his job. And third, that the employer discharged him in whole or in part because of his disability.2  In light of the district court's ruling, we focus on the first element -- "disability" -- as defined in the ADA: The term "disability" means, with respect to an individual --  (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or  (C) being regarded as having such an impairment.  ____________________ 2. A plaintiff may indirectly prove that he was discriminated against because of a disability by using the prima facie case and burden shifting methods that originated _____ _____ in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and ________________________________ were refined and sharpened in Texas Dep't of Community ___________________________ Affairs v. Burdine, 450 U.S. 248 (1981) and St. Mary's Honor ___________________ ________________ Ctr. v. Hicks, 509 U.S. 502 (1993). See Benson v. Northeast _____________ ___ ___________________ Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995); DeLuca v. ______________ _________ Winer Indus., Inc., 53 F.3d 793, 797-98 (7th Cir. 1995); ___________________ White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir. __________________________ 1995). -10- 10 42 U.S.C. 12102(2). A "physical impairment" is "[a]ny physiological disorder, or condition . . . or anatomical loss affecting," inter alia, the "cardiovascular" system. 29 C.F.R. 1630.2 _____ ____ (h)(1) (1995). "Major life activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1630.2(i). "Substantially limited" is defined as: (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. 1630.2(j)(1). Factors to be considered in assessing whether an individual is substantially limited in a major life activity are: (i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and  (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. -11- 11 29 C.F.R. 1630.2(j)(2).3 According to the Equal Employment   ____________________ 3. The regulations set forth a more particularized definition of what it means to be "substantially limited in the major life activity of working." See 29 C.F.R.  ___ 1630(j)(3). We need not consider the permutations of that definition, however, because if an individual is substantially limited in a major life activity other than working, or is so regarded, "no determination should be made as to whether the individual is substantially limited in working." 29 C.F.R. Pt. 1630, App., at 403. -12- 12 Opportunity Commission's Compliance Manual: Although short-term, temporary restrictions generally are not substantially limiting, an impairment does not necessarily have to be permanent to rise to the level of a disability. Some conditions may be long-term or potentially long-term, in that their duration is indefinite and unknowable or is expected to be at least several months. Such conditions, if severe, may constitute disabilities. 2 EEOC Compliance Manual, Interpretations (CCH) 902.4,  6884, p. 5319 (1995). Examples of impairments that are "usually not disabilities" because they are "temporary," "non-chronic," and "of short duration, with little or no long term or permanent impact," are "broken limbs, sprained joints, concussions, appendicitis, and influenza." 29 C.F.R. Pt. 1630, App. at 402.  Especially given that City Metal has never disputed that Katz had a heart attack, we have no doubt that a rational jury could conclude, even without expert medical testimony, that Katz had a condition affecting the cardiovascular system and therefore that he had a physical impairment under the ADA.4 29 C.F.R. 1630.2 (h)(1). We  ____________________ 4. In Cook v. State of Rhode Island, Department of Mental ______________________________________________________ Health, Retardation, and Hospitals, 10 F.3d 17 (1st Cir. ____________________________________ 1993), a case under Section 504 of the Rehabilitation Act of 1973 (which is interpreted substantially identically to the ADA, 42 U.S.C. 12117(b), 12201(a)), we upheld the jury verdict in favor of plaintiff, in part based on her presentation of expert medical testimony that "morbid obesity" was a physiological disorder that affected the musculoskeletal, respiratory, and cardiovascular systems. -13- 13 think, however, that it is a very close question whether Katz offered sufficient evidence to prove that that impairment "substantially limited" his major life activities within the meaning of the ADA, his scheduled expert medical witness having proved unavailable.  As might reasonably be expected after any major trauma and resultant medical procedure or surgery, Katz's ability to breathe, walk and work was substantially limited in the period immediately following the heart attack and angioplasty procedures. This does not, however, necessarily lead to the conclusion that Katz had a disability. See ___ McDonald v. Commonwealth of Pennsylvania, 62 F.3d 92, 96 (3d ________________________________________ Cir. 1995) (inability to work for two months following surgery not a disability). We think that it would be difficult for a lay jury to conclude, based solely on the immediate effects of a heart attack and angioplasty procedure on Katz, that those limitations were permanent or persisted on a long-term basis, or that their duration was indefinite and unknowable or expected to be at least several months. Katz was apparently prepared to present medical testimony to this effect but, as already noted, his medical expert was unavailable and the court declined to delay the trial.  ____________________ Id. at 23. In a case like Cook, where it is not obvious to a __ ____ lay jury that the condition affects one of the bodily systems listed in the regulations, expert testimony that it does may well be necessary to avoid a judgment as a matter of law.  -14- 14 There is certainly no general rule that medical testimony is always necessary to establish disability. Some long-term impairments would be obvious to a lay jury (e.g., a ____ missing arm) and it is certainly within the realm of possibility that a plaintiff himself in a disabilities case might offer a description of treatments and symptoms over a substantial period that would put the jury in a position where it could determine that he did suffer from a disability within the meaning of the ADA. On this record, we think it is a much closer case whether Katz put such evidence before the jury. The bulk of the evidence as to Katz's medical condition related primarily to his situation immediately after the operation, including his initial effort to return to work in which he was so stricken that he could not even leave the car and climb up a flight of stairs to the office. Katz did testify that even three years after the operation, he still felt in poor condition; but that testimony was far more general and far less specific than his testimony regarding the impact of the heart attack in the month or so immediately following its occurrence.  We think it was unwise for the district court to invoke its own medical experience in explaining its determination that Katz's evidence was inadequate, since the -15- 15 determination of whether an impairment substantially limits a -16- 16 major activity must be made on an individual basis:  The determination of whether an individual has a disability is . . . based . . . on the effect of that impairment on the life of the individual. Some impairments may be disabling for particular individuals but not for others. 29 C.F.R. Pt. 1630, App. at 402. See also Chandler v. City ___ ____ ________________ of Dallas, 2 F.3d 1385, 1396 (5th Cir. 1993) (recognizing _________ that "the effect of a given type of impairment . . . can vary widely from individual to individual"), cert. denied, 114 S. ____ ______ Ct 1386 (1994). Nonetheless, it is at least a debatable question whether, based on Katz's testimony, the jury could conclude that he suffered from a continuing medical condition, persisting beyond the period immediately after the operation, that substantially limited one or more of his major life activities.  We need not definitively resolve the issue of whether expert medical testimony was necessary for the case to go forward on a theory of actual disability in this case, because we think that the evidence permitted Katz to reach the jury under one of the alternative definitions of disability, that City Metal "regarded [Katz] as having such an impairment." 41 U.S.C. 12102(2)(C). Under the regulations an individual who has an impairment that is not substantially limiting (or has no impairment at all) is nevertheless "disabled" if he is treated by the employer as -17- 17 having an impairment that does substantially limit major life activities. 29 C.F.R. 1630.2(l)(1). An example given is an employee whose controlled high blood pressure is not a disability but is reassigned because the employer fears, wrongly, that the employee may have a heart attack. Id. Pt. ___ 1630, App. See also Cook, 10 F.3d at 20-21, 23, 25 (employer ___ ____ ____ treated employee as handicapped by refusing to rehire her based on its belief that her morbid obesity would compromise her ability to do her job and put her at risk of developing serious ailments). In this case, Katz alleged in his complaint that he was not only actually disabled but also perceived by his employer to be disabled, and was fired because of it. The dramatic encounter at the office, in which Katz was unable to climb the stairs and Wilcox observed his fatigue, is only one piece of evidence; others included the employer's knowledge of the heart attack, angioplasty procedure and hospitalization, and yet another was Katz's own statements to his employer that when he returned to work it would at least initially have to be in a limited capacity. Cf. Hamm v. __ _______ Runyon, 51 F.3d 721, 724-26 (7th Cir. 1995) (employer did not ______ "regard" employee as disabled where there was no evidence that the person who made the decision to fire him was even told about the employee's arthritis; employee told his direct supervisor that it was "nothing" and "would pass" and -18- 18 continued to do all of the functions of his job). Even if medical expert testimony were required here to permit the jury to find that Katz was suffering from a continuing serious heart condition, the jury certainly did not need medical testimony in making its own judgment as to what the employer may have perceived, rightly or wrongly, about Katz's condition. When the district court proposed to withdraw the case from the jury and direct a verdict, Katz argued to the court that regardless of actual medical condition, he had provided a basis for the jury to conclude that the employer perceived him to be disabled. The judge did not directly respond to this assertion. Katz has renewed it on appeal, but City Metal's brief also fails to respond in any depth to the perception argument. At least on this record, we have to conclude that Katz did provide enough evidence to reach the jury on the issue of perception which, as already noted, does constitute disability within the meaning of the Act. Congress, when it provided for perception to be the basis of disability status, probably had principally in mind the more usual case in which a plaintiff has a long-term medical condition of some kind, and the employer exaggerates its significance by failing to make a reasonable accommodation. But both the language and policy of the statute seem to us to offer protection as well to one who is -19- 19 not substantially disabled or even disabled at all but is wrongly perceived to be so. And, of course, it may well be that Katz was both actually disabled and perceived to be so. The second element of proof is ability to perform the essential functions of the job with or without reasonable accommodation. See 42 U.S.C. 12111(8). Katz testified ___ that five days after his discharge from the hospital and again two days after he was fired, he asked Wilcox to accommodate him by allowing him to return to work on a part- time basis. On the latter occasion, Katz suggested a reduction in salary and said he would accept whatever accommodations the company would make in order to keep his job. Reasonable accommodations include, inter alia, "job _____ ____ restructuring [and] part-time or modified work schedules." 42 U.S.C. 12111(9). As we noted in Grenier v. Cyanamid ____________________ Plastics, Inc.: ______________ With respect to known disabilities, however, the emphasis is on encouraging the employer to "engage in an interactive process with the individual to determine an effective reasonable accommodation." Guidance IV.B.6b (citing H.R. Rep. No. ________ 485 (Pt. 2), supra, at 65-66, _____ U.S.C.C.A.N. at 347-48). 70 F.3d at 677. Katz's suggestions were rejected out of hand. The district judge did not say that Katz had failed to show that he could perform his job with reasonable -20- 20 accommodations, nor does City Metal offer any argument as to this element on appeal.5  The third element of plaintiff's case, that Katz was fired because of a disability, or that his disability was a motivating factor in City Metal's decision to fire him, Pedigo v. P.A.M. Transport, Inc., 60 F.3d 1300, 1301 (8th ________________________________ Cir. 1995), also was a question of fact for the jury. The timing of Katz's firing, one month after his heart attack, was circumstantial evidence from which the jury could find that Katz's disability triggered, in whole or in part, his firing by City Metal. We rule that the court erred in granting judgment as a matter of law for City Metal, because the evidence would permit the conclusion that Katz established that City Metal regarded him as having an impairment constituting a disability under section 12102(2)(C) of the Act. Thus, he proved a prima facie case of discrimination under the ADA and _____ _____ the Rhode Island Fair Employment Practices Act.  Where there must be a remand for a new trial, we have broad authority to draft a remand order that is fair and just. 28 U.S.C. 2106. In this instance, given that Katz was deprived of his medical testimony more or less by accident, we see no reason why on retrial he should not be  ____________________ 5. City Metal was free, of course, to attempt to show that accommodating Katz would have imposed on it an "undue hardship." 42 U.S.C. 12111(10). -21- 21 allowed to present expert testimony in a timely fashion in order to show an actual disability under the statute.  Accordingly, we reverse and remand for a new trial, _______ ______ leaving it open to Katz to retry the case under any or all of the three theories of disability available under the statute. Costs on appeal awarded to appellant. -22- 22