Lillibridge v. Wooden Soldier          CV-95-288-SD  02/04/97  P

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


<u>Freda Lillibridge</u>

        v.                              Civil No. 95-288-SD

<u>Wooden Soldier, Ltd.</u>


O R D E R

In this civil action, plaintiff Freda Lillibridge alleges that defendant Wooden Soldier, Ltd., terminated her employment as a telephone order taker in violation of Title I of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101-12117 (1995).  Plaintiff also alleges violations of New Hampshire common and statutory law.

        Presently before the court is a motion for summary judgment[1] filed by Wooden Soldier requesting entry of judgment in its favor on all counts of the complaint.  Plaintiff objects.

_____

        [1]The court will treat defendant's "Motion to Dismiss and for Summary Judgment" as simply a motion for summary judgment because defendant relies on matters outside the pleadings.  <u>See</u> Rule 12(b), Fed. R. Civ. P.

## Background

Plaintiff Lillibridge began working for Wooden Soldier on or about September 21, 1993, handwriting telephone orders for the company's mail order catalog. Freda Lillibridge Affidavit ¶¶ 3, 4. On February 8, 1994, Lillibridge reported wrist pain to her supervisor. Id. ¶ 6.

On February 18, Lillibridge attended a doctor's appointment with Dr. Gary L. Woods regarding the pain in her wrist. Id. ¶ 9. At this appointment, Dr. Woods' impression was that Lillibridge did not have "carpal tunnel [syndrome][2] as such" but that her pain was caused by "overuse". Dr. Woods' Report re Feb. 18, 1994, appointment with Lillibridge (attached to defendant's motion as Exhibit II(A-2)). Dr. Woods put Lillibridge's wrist in a temporary short arm thumb spica cast. Id. Both Dr. Woods and Lillibridge believed that she would be able to write on a limited basis and continue to do her work at Wooden Soldier. Id.[3]

Later in the day on February 18, Lillibridge found that she could not write with her wrist in the cast. Transcript (Tr.) of Department of Labor Hearing at 7 (attached to defendant's motion as Exhibit I). Lillibridge called Wooden Soldier that afternoon

---

[2]Carpal tunnel syndrome is defined as "a complex of symptoms resulting from compression of the median nerve in the carpal tunnel [located in the wrist], with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1626 (28th ed. 1994).

[3]Lillibridge attended a follow-up appointment with Dr. Woods on March 9, 1994.

and told one of the owners, Yvonne Mennella, that her doctor put her wrist in a cast and she could not write but that she could still come to work and do filing or other tasks that were less strenuous to her wrist. Id. at 7, 45.

Lillibridge testified that Mennella told her if she could not do her work at that time, she should not come in at all. Id. at 23. Mennella also told Lillibridge that the company's policy required that she provide Wooden Soldier with a doctor's note explaining the limitations of her injury prior to returning to work. Id. During that phone call, Lillibridge agreed to provide her employer with a doctor's note and later testified that she found this request to be reasonable. Id. at 7, 22-23. Mennella suggested that Lillibridge have her doctor fax the note so that she could attend her next scheduled work shift on Tuesday, February 22. Id. at 45.

That same evening, Mennella left a phone message for Lillibridge, informing her that she would be at Wooden Soldier all evening and requesting that she call her back to report the status of the doctor's note. Id. Lillibridge called back that evening and left a message that she had not reached her doctor, but she would try to reach him Monday, February 21, 1994. Id. at 7, 45.

On Monday, February 21, 1994, Lillibridge called in sick to work. Ellen King's Affidavit ¶ 3 (attached to defendant's motion

3

as Exhibit IV).  The next day, Ellen King, a Wooden Soldier employee who coordinates disabled employees' return-to-work efforts, called Lillibridge to expedite her return to work.  Id. ¶ 4.  She spoke with Lillibridge's husband and was told Lillibridge had not yet secured the doctor's note.  Id.

Wooden Soldier did not get the requested fax of the doctor's note until March 18, 1994.  David Mennella's Affidavit ¶ 8 (attached to defendant's motion as Exhibit III).  While it is unclear from the record exactly why Wooden Soldier did not receive the doctor's note sooner, Lillibridge herself reports that she did not provide her doctor with Wooden Soldier's fax number until "sometime in March."  Lillibridge's Affidavit ¶ 15.  She also admits that she never followed up with her doctor, nor with Wooden Soldier, to confirm or expedite the doctor's conveyance of the note to Wooden Soldier.  Tr. of Dept. of Labor Hearing at 8.

After Lillibridge's conversation with Yvonne Mennella on Friday, February 18, Lillibridge attempted "a couple of times" to contact Wooden Soldier to discuss returning to work.  Id.  She was told she needed to speak with Wooden Soldier's president, David Mennella, personally.  Id.  Lillibridge was unable to reach him, initially because he was out of town and subsequently because he was "unavailable".  Tr. of Dept. of Labor Hearing at 8; Lillibridge's Affidavit ¶¶ 13, 14 (attached to plaintiff's

4

objection as Exhibit A).

On April 7, 1994, Lillibridge sent David Mennella a letter requesting to resume her job. Lillibridge Letter (attached to defendant's motion as Exhibit II(B-1)). He responded with a letter denying her request. Mennella Letter dated April 15, 1994 (attached to defendant's motion as Exhibit II(B-2)).

## Discussion

### 1. Summary Judgment Motion

#### a. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed. R. Civ. P.; Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996). Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s]

essential to [his] case." Celotex Corp. v. Catrett,, 477 U.S. 317, 322-23 (1986). It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'" LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, supra, 477 U.S. at 256), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994). Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party." Id. at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor. Anderson, supra, 477 U.S. at 255. Nevertheless, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

b. ADA Claim

Lillibridge claims that Wooden Soldier terminated her in violation of Title I of the ADA. Lillibridge must prove three elements in order to obtain relief under the ADA: (1) at the time of her termination she was disabled as defined by the ADA; (2) despite being disabled she was "otherwise qualified" to do the

6

essential tasks of her job, with or without "reasonable accommodation" by her employer; and (3) she was discharged, in whole or in part, because of her disability.  See Katz v. City Metal Co., 87 F.3d 26, 30 (1st Cir. 1996).[4]

For the reasons that follow, the court finds and rules that Lillibridge has failed to establish the threshold requirement that she was disabled within the meaning of the ADA.  Therefore, the court will confine its discussion to the first element.

The ADA defines disability as,

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such impairment.

42 U.S.C. § 12102(2).

In her objection, Lillibridge does not argue that she was "disabled in fact;" rather, she argues that Wooden Soldier perceived her to be disabled, and invokes section 12102(2)(c). The "regarded as" or perceived disability provision was developed

---

[4]It is possible for a plaintiff to indirectly prove disability employment discrimination by employing the prima facie case and McDonnell-Douglas burden-shifting scheme as illustrated in Katz, supra, 87 F.3d at 30.  A decision as to whether a burden-shifting model is appropriate in the instant case need not be made, as the scope of this order is limited to plaintiff's threshold element of disability.  The standard for showing disability is the same, regardless of whether a burden-shifting model is employed.

to provide relief to people who do not have a "disability in fact" but who are adversely impacted by an employer's perception that they are disabled.  See 29 C.F.R. app. § 1630.2(l) (1991).

Under the regulations of the Equal Employment Opportunity Commission (EEOC) promulgated to implement the ADA,[5] Lillibridge must show that (1) Wooden Soldier perceived her to have an impairment (2) that "substantially limited" (3) one or more of her "major life activities."  See 29 C.F.R. § 1630.2(l)(1) (1991).

A physical impairment is defined to include any physiological condition that affects an enumerated body system, one of which is the musculoskeletal system.  See  29 C.F.R. § 1630.2(h)(1).  An impairment is considered to "substantially limit" an individual if it renders that individual

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

---

[5]Administrative regulations are controlling law unless found to be "arbitrary, capricious, or contrary to the statute."  Reich v. Newspapers of New England, Inc., 44 F.3d 1060, 1070 (1st Cir. 1995).

29 C.F.R. § 1630.2(j)(1).

In determining whether a perceived impairment rises to the level of being "substantially limiting", the following factors should be taken into account:

> (i) The nature and severity of the [perceived] impairment;
> (ii) The duration or expected duration of the [perceived] impairment; and
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the [perceived] impairment.

29 C.F.R. § 1630.2(j)(2).

In determining whether Wooden Soldier perceived Lillibridge to have a physiological disorder that substantially limited a major life activity, the court will examine the information Wooden Soldier had access to regarding Lillibridge's condition.

On February 8, 1994, plaintiff reported wrist pain to her supervisor. On February 18, after a doctor's appointment, she informed Yvonne Mennella that she had a temporary cast on her wrist that prevented her from doing handwriting. Then, in March, Lillibridge told Wooden Soldier, subsequent to a doctor's appointment, that her cast was off and she could return to work.

On March 18, 1994, Wooden Soldier received the doctor's reports from Dr. Gary L. Woods regarding plaintiff's two visits for her wrist. The February 18 report states, in relevant part,

> This appears to be simply an overuse type picture

9

and does not sound like a carpal tunnel as such. I think to achieve optimum rest for all the wrist . . . a short arm thumb spica cast would be optimum. This would allow her to continue to write although it would require her to arm write rather than wrist write. . . . This is discussed with her and she feels that she can do that job therefor[e] cast was applied . . . . [We will] see her back for recheck in 4 weeks, cast off and re-evaluation.

Dr. Woods' report re Feb. 18, 1994, appointment with Lillibridge (attached to defendant's motion as Exhibit II(A-2).

The follow-up report from March 9 states, in relevant part,

I don't see anything that makes me specifically very concerned in terms of any bony ligamentous circulation or neurologic abnormalities. My sense is that just because of her general make up she is unable to carry out handwriting for a strenuous interval . . . very similar to someone who can be a recreational runner, but just simply cannot train sufficiently long to become a marathoner. In this particular situation I don't see anything that is intrinsically anatomically or physiologically incorrect . . . .

Report of Dr. Gary L. Woods re March 9, 1994, appointment with Lillibridge (attached to defendant's motion as Exhibit II(A-3)).

None of the aforementioned information on plaintiff's condition would have led Wooden Soldier to conclude that her wrist condition was a "substantial limitation." Neither she nor her doctor indicated her condition was severe in nature, expected to persist for a long duration, or expected to have a long-term impact. See 29 C.F.R. § 1630.2(j)(2). In Lillibridge's

10

February 18 conversation with Yvonne Mennella, she attributed her inability to handwrite to the presence of her temporary cast rather than to prohibitive wrist pain.  The doctor concluded in his report that plaintiff's inability to work as a telephone order taker was not due to a physiological condition.

Next, in determining whether defendant perceived plaintiff to have a physiological disorder that substantially limited a major life activity, the court will consider David Mennella's letter to Lillibridge rejecting her re-employment request.  He writes the following:

> 1.) The report from your physician (Dr. Gary L. Woods) on February 18, 1994 indicates that your arm was put in a type of cast which would allow you to write and do some data entry on the computer to enable you to continue to perform your job.  You chose however, not to return to work. . . .  When our Job Care representative tried to contact you concerning your absence from work, she found you difficult to reach and unwilling to cooperate.
> 2.) According to your physician's (Dr. Woods) re-evaluation from your follow up examination on March 9, 1994 you are unable to perform your job not because of any medical disorder but because of your general make up.  He states that he "would avoid trying to do any dramatic procedures or any long term changes to make her fit that particular task."  Dr. Woods further states that you "should just not do that particular job" (telephone order taker) . . . .
> . . . [I]t is in your best interest and in the best interest of The Wooden Soldier to follow your physician[']s advi[c]e.

Letter of David Mennella to plaintiff dated April 15, 1994

11

(attached to defendant's motion as Exhibit II(B-2)).

The letter reflects Wooden Soldier's perception that Lillibridge did not even suffer from a physiological order. In addition, the letter reflects Wooden Soldier's perception that Lillibridge was not actually limited in her ability to work while the cast was on her wrist, contrary to what she told Yvonne Mennella on February 18. The doctor's report states that both Lillibridge and her doctor believed she would be able to handwrite while in the cast. David Mennella's letter to plaintiff reflects his perception, whether correct or not, that she was able to work with the cast on her wrist but chose not to.

Finally, the letter quotes the doctor's report that Lillibridge "just 'should not do that particular job' (telephone order taker." This belief, stated by the doctor and quoted by Wooden Soldier, is not evidence that either party perceived Lillibridge to be "substantially limited."

In measuring "substantial limitation," an impairment is to be measured in relation to the average person. See Soileau v. Guilford of Maine, Inc., ___ F.3d ___, ___, 1997 WL 17956, *4 (1st Cir. Jan. 23, 1997). For Wooden Soldier to have perceived Lillibridge as substantially limited, it must have perceived her as "unable to perform a major life activity that the average person in the general population can perform." See 29 C.F.R. §

12

1630.2(j)(1). Lillibridge's doctor did not state that she was unable to perform handwriting, an activity the average person can perform. He concluded she was simply not well suited for the strenuous[6] handwriting required of a catalog order taker. He compared her to a person who can "train to be a recreational runner, but just simply cannot train sufficiently long enough to become a marathoner." Lillibridge's doctor did not believe she was substantially limited and found nothing "anatomically or physiologically incorrect." Consequently, Wooden Soldier, in relying upon the doctor's opinion, did not perceive Lillibridge to be substantially limited in her inability to do strenuous handwriting.

This case is similar to Soileau. In that case, a plaintiff brought an ADA claim against his employer asserting he was substantially limited by his diagnosed depressive disorder because it affected his ability to interact with others. The court rejected this argument, noting,

---

[6]According to plaintiff, she would complete "up to 58 phone calls per shift" and would handwrite the orders she received during these calls. See Lillibridge's Affidavit ¶ 4 (attached to plaintiff's objection). David Mennella testified that the average telephone order takes five and a half minutes to complete. See Tr. of Dept. of Labor Hearing at 63 (attached to defendant's motion as Exhibit I). Therefore, Lillibridge spent up to forty minutes an hour, or two-thirds of her total work time, handwriting catalog orders.

> Impairment is to be measured in relation to
> normalcy, or, in any event, to what the average
> person does. Soileau claims he had to leave pubs
> and stores when they became crowded. But there is
> nothing extraordinary about preferring uncrowded
> places. Soileau performed his normal daily
> chores, went grocery shopping, and visited pubs.
> That he left pubs and stores when he felt there
> were too many people does not establish that the
> nature and severity of his impairment were
> substantial.

Soileau, supra at *4. In the present case, Lillibridge's job as
a telephone order taker required an unusual amount of
handwriting. It is not "extraordinary," as compared to the
average person, that she was not well suited to this task.

The evidence in this case on the issue of perceived
disability can be distinguished from Katz v. City Metal Co., 87
F.3d 26 (1st Cir. 1996). In Katz the plaintiff brought an ADA
claim against his employer for firing him one month after he
suffered a heart attack and underwent angioplasty surgery. The
court reversed the lower court's judgment as a matter of law for
defendant, reasoning that Katz produced sufficient evidence on
the issue of perceived disability for a jury to find in his
favor. Katz's supervisor observed his unsuccessful attempt to
climb a flight of stairs to get to his office upon his initial
return to work. The supervisor was aware of Katz's heart attack
and surgery, and Katz had told him he would initially need to
return to work in a limited capacity. The court found this

14

evidence to be sufficient.

In contrast, Lillibridge has produced no evidence that Wooden Soldier perceived her to be substantially limited in her ability to work. Yvonne Mennella's perception on February 18 that Lillibridge could not write was based upon her assertion that she could not write with a cast on her wrist. Having one's wrist in a cast is not a severe or permanent condition, hence it is not substantially limiting. Any subsequent perceptions Wooden Soldier may have developed regarding Lillibridge's inability to do her job were based on doctor's reports, which also concluded that plaintiff's condition had no physiological basis.

The court does find one piece of evidence that, while ultimately irrelevant to this court's opinion, does bear mention here. During Lillibridge's February 18, 1994, telephone conversation with Yvonne Mennella, she told Mennella she could not do the writing part of her job while the cast was on her wrist. Plaintiff testified that Mennella then told her that if she could not do her job at that time, she should not come to work. Tr. of Dept. of Labor Hearing at 23 (attached to defendant's motion as Exhibit I). Mennella denies this. Id. at 47.

Even if Mennella made that statement, it is not material to the issue of perceived disability because it is not evidence that

15

she perceived plaintiff to be substantially limited. To the contrary, the statement suggests Mennella believed plaintiff would eventually be able to return to work.

The court concludes there is insufficient evidence that Wooden Soldier perceived Lillibridge's condition to be substantially limiting. In fact, the record reflects contrary evidence which suggests Wooden Soldier believed neither that Lillibridge suffered from a physiological disorder nor that she was substantially limited by her wrist condition.

After careful consideration of the record, this court finds that Lillibridge has failed to produce sufficient evidence on the threshold element of disability, and thus has failed to meet her burden of production. Therefore, defendant is entitled to summary judgment on Count 1 of plaintiff's complaint.

## Conclusion

For the foregoing reasons, defendant Wooden Soldier's motion for summary judgment on Count I of plaintiff's complaint must be and herewith is granted. The court declines to exercise its supplemental jurisdiction over the plaintiff's state law claims, and those claims are dismissed without prejudice. See 28 U.S.C.

16

§ 1367(c)(3).  The clerk shall enter judgment accordingly.

SO ORDERED.


_____
Shane Devine, Senior Judge
United States District Court

February 4, 1997

cc:   Leslie H. Johnson, Esq.
      Linda S. Johnson, Esq.