USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 ____________________

No. 97-1824

 RONALD D. RUSSO,

 Plaintiff - Appellant,

 v.

 BAXTER HEALTHCARE CORPORATION, ET AL.,

 Defendants - Appellees.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Ronald R. Lagueux, U.S. District Judge]
 [Hon. Timothy M. Boudewyns, U.S. Magistrate Judge]

 ____________________

 Before

 Selya, Circuit Judge,

 Coffin, Senior Circuit Judge,

and Shadur, Senior District Judge.

 _____________________

 Steven E. Snow, with whom Thomas R. Noel, Partridge, Snow &
Hahn were on brief for appellant.
 John Henry Pelzer, with whom Ruden, McClosky, Smith, Schuster
& Russell, P.A., Edward L. Gnys, Jr. and Gunning, LaFazia & Gnyswere on brief for appellees.

 ____________________

 March 25, 1998
 ____________________
 SHADUR, Senior District Judge. Ronald Russo ("Russo")
brought this diversity-of-citizenship action against Baxter
Healthcare Corporation ("Baxter"), claiming that Baxter had
violated his rights under the Rhode Island Uniform Trade Secrets
Act, had interfered with his prospective business relationships and
had negligently injured him by rendering his invention unpatentable
in foreign countries. When the case went to trial, Baxter
exercised its right under Fed. R. Civ. P. ("Rule") 50(a) to move
for judgment as a matter of law when Russo had completed his proofs
and rested. That motion was granted, and the action was dismissed. 
Russo appeals, and we affirm the district court's final judgment in
Baxter's favor.
 Standard of Review
 We review the grant of a Rule 50(a) motion for judgment
as a matter of law de novo, using the same standards as the
district court (Andrade v. Jamestown Hous. Auth., 82 F.3d 1179,
1186 (1st Cir. 1996)). All of the evidence and inferences drawn
from the evidence are therefore considered in the light most
favorable to nonmovant Russo, and we hereafter apply that principle
in the Facts section.
 As for the legal standard to be applied to the facts as
so considered, Andrade, id. (quoting Murray v. Ross-Dove Co., 5
F.3d 573, 576 (1st Cir. 1993), and using the older Rule 50(a) term
"directed verdict") teaches:
 A verdict may be directed only if the
 evidence, viewed from this perspective, "would
 not permit a reasonable jury to find in favor
 of the plaintiff[] on any permissible claim or
 theory."

But the plaintiff must provide "more than a mere scintilla' of
evidence and may not rely on conjecture or speculation" to justify
the submission of an issue to the jury (Katz v. City Metal Co., 87
F.3d 26, 28 (1st Cir. 1996)).
 Facts
 In 1983 Russo began working with a company then called
Superior Plastics Products Corp. and later known as Superior
Healthcare Corporation ("Superior") under an agreement calling for
him to develop new medical products in return for royalties based
upon the success of his inventions. In 1989 Russo developed a new
kind of closed-seal tracheal suction catheter, a device that uses
an endotracheal tube to clear the airways of patients breathing on
a mechanical ventilator. Russo's catheter had unique features,
such as a rear irrigation port and a clamp valve, that
distinguished it from others on the market. 
 Russo disclosed his idea for the improved catheter to
Superior's President David Brodsky ("Brodsky"). Because Brodsky
considered that Superior lacked the ability to market such a
product, he sought another company to fill that role. To that end,
in April 1990 Brodsky and Baxter discussed an agreement under which
Baxter would manufacture and distribute the device. As part of
its evaluation of the product, Baxter sent prototypes of the
catheter to two clinicians so they could conduct bench trials. 
Baxter did not require that either clinician sign a confidentiality
agreement before doing so.
 In May Brodsky told Russo about his discussions with
Baxter (but not about the bench trials). Russo asked that Baxter
be required to sign a confidentiality agreement, and Brodsky orally
agreed to obtain one. Later in May Russo stopped working with
Superior because of a dispute over money and issues unrelated to
this action. Nonetheless, Russo retained some access to Superior's
offices and observed that Superior continued to develop his
catheter. He also learned that in June Baxter and Superior had
entered into an Exclusive Distribution Agreement ("Agreement") that
granted Baxter an option to obtain rights in the catheter.
 Russo acted promptly in response to that discovery,
sending two letters to Baxter asserting that he held the rights to
the catheter. On June 14 he also filed an application with the
United States Patent and Trademark Office ("PTO") for a patent on
the catheter, and on June 25 he sued Superior and Baxter in Rhode
Island Superior Court, seeking an injunction to prevent both
companies from implementing the Agreement. Baxter and Superior
promptly countered in July by submitting their own application to
the PTO for a United States patent on the catheter. In addition
Baxter, without Russo's knowledge, conducted additional field
trials on the catheter from June to August. As part of those field
trials, Baxter sent out samples of the device to 14 hospitals
around the United States to solicit practitioner comments. Again
Baxter did not require that the participants in its field trials
agree to keep the catheter confidential.
 Over a year later, in late October 1991, Russo's patent
attorney Robert Doherty ("Doherty") received a Notice of Allowance
from the PTO informing him that Russo's United States patent
application had been approved. Doherty paid the mandatory issuance
fee and expected that the PTO would issue the patent within two or
three months. In November 1991 Russo discussed filing patent
applications in foreign countries with Doherty. They agreed on a
tentative list of target countries, and Doherty sought out a
consultant in foreign patent law because he lacked sufficient
contacts and knowledge to file patents in most foreign countries.
 On December 9, 1991 Baxter displayed Russo's closed
suction tracheal catheter at the American Association of
Respiratory Care convention in Atlanta. Baxter demonstrated the
catheter, incorporated it into a sales brochure and took some sales
leads on it. Russo did not authorize any of those activities, and
he did not discover what Baxter had done until several days after
the convention. 
 Russo immediately told Doherty about Baxter's
unauthorized disclosure of his product at the convention (at that
point Russo did not know about the earlier bench trials and field
tests). Without performing any research or consulting with his
foreign patent expert, Doherty advised Russo that Baxter's
disclosures at the convention had destroyed the novelty of his
invention and thus made it unpatentable in any foreign country
other than Canada or possibly Australia. Doherty told Russo that
no foreign patent applications should even be filed, because he
believed that no patents could issue after Baxter's publication at
the Atlanta convention--or alternatively, that any patents that
might issue would be invalid and worthless.
 Doherty's legal advice was dead wrong. Under the
European Patent Convention and the law of most industrialized
countries, an unauthorized disclosure of an invention does not
immediately destroy its novelty (and thus foreclose the inventor's
ability to patent the invention). Instead, such an adverse
disclosure bars only patent applications made more than six months
after the date of the disclosure (Art. 55 of the Convention on the
Grant of European Patents, as printed in European Patent Convention(4th ed., Munich: European Patent Office, 1987)). That being so,
Doherty should instead have advised Russo that he could still apply
for foreign patents, because Baxter's actions at the Atlanta
convention would not by themselves have affected Russo's ability to
obtain such patents if applied for during the six-month window
period after December 9, 1991.
 What is critical to this litigation is that Russo relied
upon Doherty's flawed advice and decided not to seek patents
abroad. As a consequence, Doherty did nothing more to prepare any
foreign patent applications. 
 On January 28, 1992 the PTO issued a patent to Russo on
his catheter. That unquestionably barred Russo from obtaining any
foreign patents because that publication of the catheter--made
under the auspices of Russo himself, rather than by some
unauthorized third party--made it a part of the "state of the art,"
so that it was not a "new" invention for foreign patent purposes.
That destroyed the invention's eligibility for such patents
(European Patent Convention Art. 54).
 Proceedings Below
 On October 19, 1994 Russo sued Baxter in the district
court alleging injury from Baxter's December 1991 publication of
the catheter at the Atlanta convention. During discovery Russo
first learned that earlier--in 1990--Baxter had conducted the bench
trials and field tests on the catheter without any confidentiality
agreements. Russo amended his complaint to encompass those earlier
activities and asserted that the initial disclosures (1) had
violated his rights under the Rhode Island Uniform Trade Secrets
Act, (2) had interfered with his prospective business relationships
and (3) had negligently injured him by rendering his device
unpatentable in foreign countries. 
 As stated at the outset of this opinion, when Russo
closed his proofs at trial, Baxter sought judgment as a matter of
law under Rule 50(a). On May 29, 1997 the district court delivered
an oral opinion granting Baxter's motion on all three counts
because Russo had failed to establish that Baxter had either caused
his injury or disclosed his trade secret. In addition, the
district court determined that the statute of limitations had run
on the trade secret count, that Russo had no prospective
contractual relationships--thus eliminating the second count--and
that Russo's claimed damages were purely speculative in any event. 
This appeal followed.
 Causation All of Russo's claims depend on his ability to establish
damages flowing from Baxter's actions--and that in turn depends on
the requisite causal nexus between Baxter's actions and Russo's
failure to obtain any valid foreign patents. But it has already
been said that Russo never actually applied for the foreign patents
because of Doherty's bad advice--because Doherty wrongly counseled
Russo that Baxter's disclosure of his catheter at the 1991 Atlanta
convention had disqualified his invention for foreign patent
purposes. That advice led the district court to conclude that
Doherty's "egregious legal malpractice" had acted as an independent
intervening cause that insulated Baxter from any liability for its
behavior at the Atlanta convention. 
 Russo now claims that the Baxter-sponsored bench trials
and field tests in 1990 had already caused the harm of which he
complains. As Russo would have it, those tests--conducted over a
year before he consulted with Doherty--make his failure to apply
for patents in 1991 irrelevant, because he could not then have
taken advantage of the six-month grace period even if Doherty had
correctly understood foreign patent doctrine (as he did not). 
Russo is essentially contending that although Doherty's legal
analysis was wrong, his ultimate conclusion of no foreign
patentability was right because Baxter's disclosures had earlier--
in 1990--doomed Russo's ability to get the foreign patents.
 That argument founders on a fundamental point of law and
an equally fundamental point of logic. As to the former, Russo
must show both causation in fact and proximate causation to recover
against Baxter. Breach of a legal duty is a cause in fact of harm
if that harm would not have occurred but for the breach
(Restatement (Second) of Torts ("Restatement") 432(1)(1965)). 
Here Russo has not shown, because he cannot show, that he would
have obtained foreign patents but for Baxter's 1990 disclosures. 
 Whether Russo would indeed ever have obtained foreign
patents if it had not been for Baxter's unauthorized disclosures is
totally speculative--and it is rendered totally speculative by the
fact that Russo never applied for such patents (so that, for
example, it can never be known whether some wholly separate and
different reason would have caused rejection of the applications). 
And of course Russo's failure to apply for them was not ascribable
to Baxter, but was rather the consequence of Doherty having wrongly
advised Russo that any unauthorized disclosure by Baxter had
rendered his catheter unpatentable abroad. 
 Both as a matter of law and as a matter of logic, Russo
cannot separate the strands of causation by pointing to Baxter's
earlier disclosures via the 1990 bench trials and field trials,
while ignoring the import of the bad legal advice imparted to Russo
by Doherty. To construct a hypothetical scenario in terms of that
earlier unauthorized disclosure, Russo is compelled to recognize
that it would not have made the slightest bit of difference if he
had been aware of it from the outset (rather than learning of it
via disclosure in this action): Even an immediate consultation
with Doherty would have elicited the same wrong advice and would
have caused the same nonfiling of any foreign applications. In
sum, Russo fails the "but for" precondition to recovery under any
permissible view of the facts. 
 Russo nonetheless disputes whether Doherty's advice
should shield Baxter from liability, arguing that even if Doherty's
conduct was an intervening force, it was not a superseding cause. 
Intervening forces insulate a party from liability only if they are
not foreseeable consequences of that party's original negligence
or, in other words, if they are not "a natural and probable
consequence of the initial tortfeasor's act" (Walsh v. IsraelCouture Post, No. 2274 V.F.W., 542 A.2d 1094, 1097 (R.I. 1988)). 
Russo argues that Doherty's bad advice is not a superseding cause
because it was a foreseeable consequence of Baxter's negligence.
 Any such determination of whether a third party's
intervening cause is also a superseding cause, so as to negate
proximate causation on the part of the primary tortfeasor, is
governed by traditional tort rules. Restatement 442 sets forth
the relevant factors in such a determination:
 (a) the fact that its intervention brings
 about harm different in kind from that which
 would otherwise have resulted from the actor's
 negligence;

 (b) the fact that its operation or the
 consequences thereof appear after the event to
 be extraordinary rather than normal in view of
 the circumstances existing at the time of its
 operation;

 (c) the fact that the intervening force is
 operating independently of any situation
 created by the actor's negligence, or, on the
 other hand, is or is not a normal result of
 such a situation; 

 (d) the fact that the operation of the
 intervening force is due to a third person's
 act or to his failure to act;

 (e) the fact that the intervening force is
 due to an act of a third person which is
 wrongful toward the other and as such subjects
 the third person to liability to him;

 (f) the degree of culpability of a wrongful
 act of a third person which sets the
 intervening force in motion.

 In this instance it is really unnecessary to go beyond
the first factor. Doherty's bad advice produced a harm radically
different from that ascribable to Baxter's actions alone. After
all, it is really uncertain whether foreign patents would have
issued on the strength of Russo's claimed invention even in the
absence of Baxter's unauthorized disclosures--and that uncertainty
can never be resolved, because the foreign patent offices were
never given that opportunity. By contrast, what is really certain
is that the reason that the opportunity was never given (and that
the opportunity would never have been given even in the context of
the original disclosures) was Doherty's wholly independent bad
legal advice.
 Although that alone would defeat Russo's attempted
distinction between intervening force and superseding cause, the
same conclusion is buttressed by the other Restatement factors. 
None of them suggests that the intervention of Doherty's wrong
advice was foreseeable in any appropriate sense of that term. Not
only was Doherty an unrelated third party acting outside of
Baxter's control, but it can scarcely be found reasonably
foreseeable that his legal advice would fall to the level of
malpractice as it did. Doherty admitted that he lacked expertise
in foreign patent law (his experience lay in domestic patent
issues). Yet when presented with a question that depended upon
knowledge of patent law in numerous foreign jurisdictions, Doherty
counseled his client without troubling to conduct any research or
to consult with a more knowledgeable lawyer. Not surprisingly,
that reckless approach yielded advice clearly contrary to
established foreign patent doctrine and misled Russo to believe
that he was barred from pursuing foreign patents when in fact he
was not. 
 Surely Doherty's legal advice was not only an independent
force, but was also an extraordinary rather than a normal event. 
It must be concluded that Russo fares no better in his effort to
pigeonhole Baxter's conduct through the use of labels such as "no-
superseding-cause" than he has done in the earlier analysis in this
opinion. We conclude that the district court was justified in
concluding that Doherty's poor advice was an intervening force that
insulated Baxter from liability.
 That disposes of Russo's final causation argument. In
sum, while resolving causation is generally within the jury's
domain, the fact "[t]hat causation is ordinarily a fact question
does not make it invariably a fact question" (Peckham v.
Continental Casualty Ins. Co., 895 F.2d 830, 837 (1st Cir. 1990)
(emphasis in original)). Here Russo has not tendered the required
evidence that the injury of which he complains--the nonissuance of
foreign patents--would not have been suffered but for Baxter's
disclosures. Hence he has not satisfied Katz's requirement that he
show "more than a mere scintilla" of evidence on causation, and it
was appropriate for the district court to have decided causation as
a matter of law. And because the element of proximate cause is
essential to each of Russo's claims, that calls for the denial of
all three claims as a matter of law.
 Indeed, it is worth noting that in addition to negating
causation, Russo's failure to apply for foreign patents renders his
damages claims wholly speculative as well. That inaction on his
part has made it impossible for Russo and Doherty to identify with
any specificity the countries in which they would have sought (and,
but for Baxter's conduct, would even presumptively have obtained)
patents and marketed the catheter.
 Relatedly, Russo could only ask a jury to guess to what
degree his invention would have been accepted commercially in those
markets or how he would have profited from that acceptance. In
fact, the actual sales performance of Russo's device suggests that
his product would not be accepted in foreign markets. No company
sells the catheter anywhere in the world, even though it could be
manufactured and sold abroad unencumbered by any patent
restrictions or obligations to pay royalties. That total absence
from the market may reflect the flaws with the product identified
in Baxter's field trials. Hence, lacking anything but sheer
speculation as to his asserted damages, Russo's claims would also
fail as a matter of law at that stage of analysis. Conclusion
 In light of our determination on the causation issue,
which reaches all three of Russo's claims, there is no need to
revisit in any detail any of the district court's additional
grounds for granting Baxter's Rule 50(a) motion. We AFFIRM.