Jose Alicea PONCE, et al., Plaintiffs,

v.

ASHFORD PRESBYTERIAN COMMUNITY HOSPITAL, Defendant and Cross–Claimant,

v.

Dr. Jose N. Santiago, et al., Defendants and Cross–Claimees.

No. Civ. 95–1627(SEC).

United States District Court, D. Puerto Rico.

Aug. 25, 1999.

Jose L. Ubarri-Garcia, Brown & Ubarri, San Juan, PR, for plaintiffs.

Jose Iguina, Ashford, Martinez-Texidor & Fuster, Ponce, PR, for defendant.

Jaime E. Sifre-Rodriguez, Sanchez Betances & Sifre, Hato Rey, PR.

Hilda M. Surillo-Pena, Hato Rey, PR.

### OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is defendant Ashford's Renewed Motion for Judgment as a Matter of Law (**Docket # 217**). Upon careful review of the applicable case law and the defendant's arguments, defendant's Motion for Judgment as Matter of Law is **GRANTED.**

### Applicable Law

The First Circuit Court of Appeals recently had the opportunity to expound upon the applicable standard to grant a judgment as a matter of law, under Fed.R.Civ.P. 50. In *Irvine, IRG v. Murad Skin Research Laboratories, Inc.,* 183 F.3d 29, (1st Cir.(Puerto Rico)1999), the Court explained that motions for judgments as a matter of law under Rule 50(a)(1) Fed.R.Civ.P. should be granted only in cases where, after reviewing the evidence, as well as all permissible inferences drawn therefrom in the light most favorable to non-moving party, the court finds that a reasonable jury could not render a verdict in that party's favor. *Mangla v. Brown University.,* 135 F.3d 80, 82 (1st Cir.1998); *Ed Peters Jewelry Co. v. C & J Jewelry Co.,* 124 F.3d 252, 261 (1st Cir.1997); *Bogosian v. Mercedes–Benz of N. Am., Inc.,* 104 F.3d 472, 475 (1st Cir.1997); *Speen v. Crown Clothing Corp.,* 102 F.3d 625, 628 (1st Cir.1996), *cert. denied,* 520 U.S. 1276, 117 S.Ct. 2457, 138 L.Ed.2d 214 (1997).

■ Rule 50 analysis forbids the court from taking into account the credibility of witnesses, resolving evidentiary conflicts, or weighing of the evidence introduced at trial. *Alvarez–Fonseca v. Pepsi Cola Bottling Co.*

of *P.R.,* 152 F.3d 17, 23 (1st Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1778, 143 L.Ed.2d 806; *Logue v. Dore,* 103 F.3d 1040, 1043 (1st Cir.1997); *Katz v. City Metal Co., Inc.,* 87 F.3d 26, 28 (1st Cir.1996).

■ Conversely, the party opposing a Rule 50 motion must have introduced at trial sufficiently adequate evidence for the jury to determine the plausibility of a particular fact. The First Circuit has held that "in order to support a jury finding on such an issue, the evidence presented must make the existence of the fact to be inferred more probable than its nonexistence." *Alvarez–Fonseca,* 152 F.3d at 24; *Katz,* 87 F.3d at 28. A mere "scintilla of evidence" will not rise to a triable issue of fact necessary to avoid dismissal under Rule 50, *Crane v. Green & Freedman Baking Co., Inc.,* 134 F.3d 17, 21 (1st Cir. 1998), nor will "conjecture" or "speculation" over the evidence presented provide sufficient grounds to warrant a fact-finding determination by the jury. *Russo v. Baxter Healthcare Corp.,* 140 F.3d 6, 8 (1st Cir.1998) (citing *Katz v. City Metal Co.,* 87 F.3d at 28).

### Analysis

■ Ashford argues, and this Court agrees, that taking into account only plaintiff's favorable evidence regarding the alleged negligence of Ashford and its nursing personnel during the delivery of baby Natalie Alicea on September 4, 1993, no rational jury could find either negligence or causation on behalf of Ashford and its employees, nurses Elsie Oliveras and Sonia Concepcion.

The only "scintilla" of evidence upon which the jury in this case could have conceivably rested its conclusion that Ashford's personnel contributed to Natalie's brachial plexus injury and the ensuing Erb's Palsy is the testimony of Dr. Juan Vigo. The only link, however tenuous, between a finding of "excessive" or "undue" traction upon delivery of Natalie Alicea and the injuries sustained by her, rests upon the testimony of Dr. Juan Vigo.[1]

---

1. Dr. Vigo admitted during cross-examination that he was not an expert in obstetrics and gynecology and that he could not establish if there had been any negligence during delivery. Since

Dr. Vigo does not know the procedures used by obstetricians to deal with shoulder dystocia, his testimony, without more, is insufficient to establish negligence by the assisting nurses.

Dr. Vigo testified that the "brachial plexus" injury suffered by Natalie Alicea was due to traction applied during delivery. The inference from Dr. Vigo's theory, which is vigorously embraced by plaintiffs, is that the delivering physician, Dr. Hector Rosario, while extracting baby Natalie Alicea from Wanda Sanchez Alicea's uterus—after Mrs. Sanchez Alicea was placed in the MacRoberts position and after nurse Elsie Oliveras and Dr. Nolasco had applied suprapubic pressure upon her to facilitate her delivery—performed "undue traction" upon baby Natalie, thus causing her "brachial plexus" injury, which led to her development of Erb's Palsy. Apparently, based on Dr. Vigo's theory and the inferences derived therefrom, the jury found liability against both the physicians and Ashford Hospital.

Notwithstanding the jury's apparent finding of "undue traction" by Dr. Rosario, which allegedly caused Natalie's injuries, there is no legally sufficient evidence upon which a rational jury could find a "causal nexus" between Natalie Alicea's injuries and Ashford's alleged under staffing in the delivery room where Wanda Sanchez Alicea delivered her baby. Furthermore, there is no legally sufficient evidence for a rational jury to find that the nurses alleged "unpreparedness" or "lack of proper training" contributed in any way to Natalie's brachial plexus injury.

According to plaintiffs' own legal theory, as presented and submitted to the jury, plaintiffs' evidence could only establish negligence by Ashford, pursuant to Article 1802 of the Puerto Rico Civil Code[2], only if Ashford's attending nurses were untrained or undertrained, and thus failed to perform adequately and in compliance with the applicable standard of nursing care during the "shoulder dystocia" emergency which arose at Wanda Sanchez Alicea's delivery. Plaintiffs failed to provide more than a "scintilla" or "fragmentary tendril" of evidence regarding the nurses' inadequate training or non-compliance with the standard of care. *Silva v. Worden*, 130 F.3d at 29.

The evidence presented at trial revealed that both nurse Elsie Oliveras,—a licensed nurse since 1969, who renewed her nursing license every three years, with 22 years experience at Ashford and 32 years of experience in delivery rooms—and nurse Sonia Concepcion—a practical nurse with twelve years of experience and who has worked in Ashford's delivery room since 1993—received favorable evaluations from their supervisors; complied with the Hospital's rules and regulations; complied also with the applicable standard of care for nurses in Puerto Rico, and, most importantly, with Dr. Hector Rosario's medical orders during the delivery of Natalie Alicea.[3]

Even assuming *arguendo*, that the jury could find sufficient evidence to conclude that Ashford's nurses were somehow unprepared to deal with a "shoulder dystocia" emergency, or that the delivery room was understaffed at the time of the Wanda Sanchez Alicea's delivery, the utter absence of evidence linking any of the nurses' actions to baby Natalie's "brachial plexus" injury precludes any rational jury from finding that the nurses' negligence caused the injuries sustained by Natalie Alicea Sanchez and the concomitant damages sustained by plaintiffs. The evidence reveals that nurses Oliveras

---

**2.** In this jurisdiction, tort liability is governed by Article 1802 of the Puerto Rico Civil Code, P.R.Laws Ann. tit. 31, § 5141 (1990), which imposes responsibility for damages caused by negligence or fault. The necessary elements to prevail in a tort action are: (1) a negligent act or omission, (2) damages and (3) a causal relationship between them. *De-Jesus–Adorno v. Browning Ferris Indus. of P.R., Inc.*, 160 F.3d 839, 842 (1st Cir.1998); *Marshall v. Perez Arzuaga*, 828 F.2d 845, 847 (1st Cir.1987); *Montalvo–Feliciano v. Cruz–Concepcion*, 144 D.P.R. ——, 98 TSPR 7 (1998).

**3.** The Supreme Court held in *Blas Toledo v. Hospital Nuestra Senora de la Guadalupe*, 98

J.T.S. 101 (1998): "With regards to the responsibility of nurses for acts or omissions, we have held that a nurse must exercise a degree of reasonable care to avoid causing unnecessary damage to the patient, and such degree of care must be equal to the degree of care exercised by other nurses in the locality or similar localities." *Castro v. Municipio De Guanica*, 87 D.P.R. 725, 728–729 (1963). "In the country's hospitals nurses and the rest of the paramedic personnel have the unavoidable duty to fulfill medical orders with the required urgency and in accordance with each patient's particular circumstances." (citing *Nunez v. Cintron*, 115 D.P.R. 598, 608 (1984)).

and Concepcion followed Dr. Rosario's orders, as they properly placed and sustained Wanda Sanchez Alicea in the MacRoberts position and applied suprapubic pressure during delivery. In addition, Dr. Rosario called upon another available obstetrician, Dr. Nolasco, to assist him during the unpredictable emergency caused by "shoulder dystocia."

Our ruling is thus two-pronged. First, there is no legally sufficient evidence to support a rational jury's finding that Ashford's delivery room was understaffed or that nurses Oliveras or Concepcion were improperly trained to handle any delivery, including a "shoulder dystocia" emergency. Furthermore, assuming a rational jury could discern any proof beyond a scintilla of evidence to find that Ashford either understaffed its delivery room or employed unprepared nurses, the same jury will be unable to detect any evidence upon which it could base its ruling that Ashford's actions or omissions, or its nurses' actions or omissions, contributed to Natalie's injuries and plaintiffs' damages.

Accordingly, since no rational jury. could find that the nurses' inadequate training or the Ashford's alleged under staffing contributed to plaintiffs' injuries, Ashford's Renewed Motion for Judgment as a Matter of Law must be **GRANTED (Docket # 217)**. The judgment will be **VACATED** and plaintiffs' complaint against Ashford will be **DISMISSED**.

**SO ORDERED.**

