Enrique **ACEVEDO–FELICIANO** Carlos Concepcion–Chaparro Eileen B. Sanchez–Feliciano Jose A. Mendez–Valle Angel Castro–Gonzalez Miguel A. Cortes–Roman William Rosa–Figueroa Miguel Torres–Perez Edwin Acevedo–Acevedo Raul Paneto–Toro Gilberto Vargas–Rios Amilcar Muniz–Rosado Adelaida Rosario–Galloza Angel L. Jimenez–Acevedo Edwin Villar-rubia–Soto Jose Villanueva–Rodriguez Jose A. Cuevas Heranndez Elba I. Quintana–Roman Ramonita Acevedo–Munoz Pablo Villanueva–Ruiz Thuaila Muñiz–Santoni Glorivee Surez Anibal Mendez–Acevedo Santiago Hernandez–Ruiz Ramonita Rodriguez–Varela Plaintiffs

v.

Miguel A. **RUIZ–HERNANDEZ,** in his official capacity as Mayor of the Municipality of Aguada and in his personal capacity; Glenda L. Pena–Munoz, in her official capacity as the Municipality of Aguada's Human Re-

sources Director and her personal capacity; Anibal Mendoza, in his official capacity as the Municipality of Aguada's Public Works Director and his personal capacity; Municipality of Aguada Defendants

v.

Julio Cesar Roman, Third–Party Defendant.

No. CIV.01–1445CCC.

United States District Court, D. Puerto Rico.

June 13, 2003.

Iván M. Castro–Ruiz, Esq., Aldarondo & Lopez–Bras, Hato Rey, PR, for Plaintiffs.

Johanna Emmanuelli–Huertas, Esq., Gina Ismalia Gutiérrez–Galang, Esq., Ponce, PR, for Defendants.

## RULING ON DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

CEREZO, District Judge.

Before the Court is defendants' Motion for Judgment as a Matter of Law made pursuant to Fed.R.Civ.P. 50, as argued by them in open court on April 4, 2003 upon the conclusion of plaintiffs' presentation of evidence, and later supplemented in writing on April 8, 2003 (**docket entry 176**), as well as plaintiffs' arguments in opposition also made in open court and subsequently supplemented in writing on April 7, 2003 (**docket entry 175**). Defendants Miguel Ruiz–Hernández and Glenda Peña, the Mayor and Human Resources Director of the Municipality of Aguada (Municipality), seek the dismissal of the claims of political discrimination and violation of due process of law brought against them by the twenty-two (22) plaintiffs, all of whom were formerly employed by the Municipality in jobs funded through the Employment Opportunities Development Fund created by Section 2 of Act 52 of August 9, 1991 (29 L.P.R.A. § 711c), more commonly known as "Law 52."

In resolving a Rule 50(a) motion for judgment as a matter of law, we must:

> examine the evidence and all fair inferences in the light most favorable to the plaintiff and may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence. To warrant submission of an issue to the jury, the plaintiff must present more than a mere scintilla of evidence and may not rely on conjecture or speculation. The evidence offered must make the existence of the fact to be inferred more probable than its nonexistence.

*Katz v. City Metal Co., Inc.,* 87 F.3d 26, 28 (1st Cir.1996) (internal quotation marks and citations omitted). In order to grant the motion, "we must find that, as a matter of law, the record would permit a reasonable jury to reach only one conclusion as to that issue." *Id.* "If instead fair-minded persons could draw different inferences from the evidence presented at trial, the matter is for the jury." *Espada v. Lugo,* 312 F.3d 1, 2 (1st Cir.2002).

Thus, we begin our analysis by examining the evidence presented by the plaintiffs, which establishes that between June 20, 2000 and September 1, 2000 all twenty-two plaintiffs received letters from the Municipality's former Mayor, Julio César Román, informing them of their appointments to a myriad of posts through a "proposal" of the Commonwealth's Department of Labor funded under Law 52. *See* Plaintiffs' Exhibits 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41 & 43. Although the starting dates for the appointments varied from July 1, 2000 until September 6, 2000, all were made effective by the former Mayor until June 30, 2001. A contract between the Municipality and the Department of Labor which provided funding for 45 posts under Law 52, among them those of the plaintiffs, was subscribed on June 30, 2000, and was in effect from July 1, 2000 until December 31, 2000. Under the provisions of said contract, the Municipality was awarded $295,908.09 for the payment of salaries and marginal benefits of those 45 employees. Among other specifications, the contract required the Municipality to maintain those funds separate from any other municipal funds, and to return any monies not used by it for the contracted purposes.

As a result of the general elections held in Puerto Rico on November 7, 2000, a new mayor, elected on the Popular Democratic Party (PDP) ticket, was swept into power in Aguada. The new mayor, defendant Ruiz–Hernández, was sworn into office on January 9, 2001. Shortly thereafter, on January 31, 2001, letters were issued by him to the twenty-two plaintiffs informing them of the expiration on December 31, 2000 of the Law 52 grant which funded their positions, of the concomitant expiration of their appointments on said date, and of their dismissal. *See* Plaintiffs' Exhibits 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44. All plaintiffs worked in the Municipality until January 31, 2001. None of them were afforded a hearing prior to their termination. During the month of January 2001, as the Law 52 grant had expired, plaintiffs' salaries were paid with municipal funds. *See* Exhibits 45 & 46. Defendant Ruiz–Hernández and the new Human Resources Director appointed by him, co-defendant Peña, are PDP members. All plaintiffs, in turn, are affiliated to the opposing New Progressive Party (NPP) and had openly supported the NPP's mayoral candidate, Luis Echevarría–Santiago, during the 2000 elections. When the Municipality and the Department of Labor entered into a new Law 52 contract on February 12, 2001, which provided funding for 40 positions from February 16 until June 30, 2001, none of the plaintiffs were offered the opportunity to return to their previous posts, although Peña had promised them that they would be recalled as soon as new Law 52 funds became available. Instead, it appears that PDP affiliates were hired to substitute the dismissed plaintiffs at their jobs.

Against this factual backdrop, defendant Ruíz–Hernández has moved for the dismissal of the due process claims brought against him,[1] while defendant Peña seeks the dismissal of both the due process and First Amendment claims asserted against her. Both defendants also claim to be qualified immune from any damages' claims. Plaintiffs have refuted their assertions. Having reviewed plaintiffs' evidence, and the parties' arguments, we now GRANT the Rule 50 motion as to plain-

---

1. During oral argument of the Rule 50 motion, the Mayor had also pressed for the dismissal of plaintiffs' claims under the First Amendment. Said request was denied by the Court at the hearing and is no longer pending before us.

tiffs' due process claims but DENY it in all other respects.

As to the due process claims, it is well established that in order to maintain a constitutional due process claim arising out of the termination of his employment, a public employee must first demonstrate that he has a reasonable expectation, arising out of a statute, policy, rule, or contract, that he will continue to be employed. *Wojcik v. Massachusetts State Lottery Com'n*, 300 F.3d 92, 101 (1st Cir.2002). The claim of a protected property interest is determined "by reference to state law." *Id.*, at 102. (*quoting Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). Under Puerto Rico law, transitory employees generally do not have a property interest in continued employment beyond the terms of their appointment. *Caro v. Aponte–Roque*, 878 F.2d 1, 4 (1st Cir.1989); *see also Departamento de Recursos Naturales v. Correa*, 118 D.P.R. 689, 697 (1987). It has also been held that under Puerto Rico law any property right associated with a position is rendered null and void if the position was illegally obtained. *See Rosario–Torres v. Hernandez–Colon*, 889 F.2d 314, 319–20 (1st Cir. 1989) (collecting cases).

The evidence on record clearly established that the Law 52 grant which funded plaintiffs' positions expired on December 31, 2000. Although in making plaintiffs' appointments the Municipality's former Mayor, Julio César Román, made them effective until June 30, 2001, he clearly lacked authority under the Law 52 contract then in effect to extend the duration of the appointments beyond the term specifically stipulated therein. While plaintiffs contend that the former Mayor could have extended the terms of their appointments until the date mentioned in his letters by utilizing municipal funds to pay for their salaries and other benefits once the Law 52 funds were depleted, we

need not delve into that possibility as the fact remains that in making the appointments the former Mayor made sole and express reference to the Law 52 "proposal" as the mechanism which made them possible. *See* Plaintiffs' Exhibits 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41 & 43. Thus, the former Mayor clearly acted *ultra vires* in making appointments to Law 52 posts for terms that exceeded the duration of the Law 52 grant, and in so doing failed to extend plaintiffs' property interest in continued employment in their positions beyond the term established in the Law 52 contract. Indeed, the Mayor could not effectively confer a property interest on plaintiffs merely by making statements contrary to the Law 52 contract provisions. *Cf. Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 54–55 (1st Cir.1990) (holding that written assurances in letter of engagement were insufficient to contravene a "comprehensive network of statutory and regulatory directives governing the terms of ... employment").

In an effort to salvage their due process claims, plaintiffs have advanced some creative, although unavailing, arguments. Plaintiffs first dissect a provision of the Law of Autonomous Municipalities which defendants cited in support of their contention that the terms of the appointments could not exceed the availability of funds provided in the contract, 21 L.P.R.A. § 4554(c), claiming that it does not stand for what defendants propose. But, just as the plaintiffs, we fail to see the particular applicability of said section to the facts of this case and that is precisely why we did not discuss it in reaching our conclusion. Next, plaintiffs suggest that, as a Law 52 grant "merely provides a monetary incentive for defraying municipal employees' costs, it does not impede the municipality from bestowing additional benefits upon such positions at the municipality's ex-

pense," (Plaintiffs' Memorandum of Law, docket entry 175, at pp. 4–5). Although plaintiffs imply that, in this instance, such additional benefits could have included the extension of their appointments with municipal funds beyond the expiration of the Law 52 contract, the fact remains that the former Mayor in making their appointments made exclusive reference to the Law 52 grant as the source of his authority, and no evidence has been provided that municipal funds were ever budgeted by him to fully fund their positions for another six-month term once the Law 52 grant expired on December 31, 2000. Finally, plaintiffs accuse defendants of being "budget illiterates" for proposing that a failure to meet budgetary income expectations is a source of contractual nullity. While this most certainly is not the norm, it is neither the rule that the creation of positions be made dependent on particular funds obtained by a municipality, as happened here. We, as the defendants, remain convinced that if posts are created by a municipality with an allotment of funds which has been precisely earmarked to defray their cost, and the contractual provisions governing those funds distinctly provide that they must be maintained separate from any other municipal funds and that the monies not used for the stated purposes must be returned, the depletion of those funds necessarily results in the elimination of the positions.

In sum, inasmuch as when plaintiffs were terminated in January 2001 they no longer had any property interest in their positions, no deprivation of constitutionally protected property occurred requiring that they be afforded with due process of law, as plaintiffs had pleaded. Accordingly, all claims based on the violation of plaintiffs' due process rights are ORDERED DISMISSED.[2]

■ With regard to the First Amendment claim brought against defendant Peña, defendants contend that there is simply no evidence showing her personal involvement in the decisions to terminate the plaintiffs in January and not recall them in February 2001. Defendants aver that, at most, the evidence shows her carrying out the ministerial duty of handing to each of the plaintiffs termination letters signed by the co-defendant Mayor. Although the testimony of the majority of the plaintiffs confirms defendants' portrayal of Peña's role, plaintiff William Rosa–Figueroa testified that during the first week of February 2001 he met with Peña to apprise her of his personal situation and dire need for a municipal job, and Peña then told him that while there were certain indispensable jobs in Aguada and those people would be reappointed, he had to understand that she had to leave some space for people of her own party. Given these statements, and Peña's key position as Human Resources Director which can be fairly inferred as giving her input on the personnel decisions taken by the Mayor, we do not believe that a reasonable person would be forced to conclude that Peña had nothing to do with the terminations and non-renewal of plaintiffs' appointments, as suggested by defendants. Thus, plaintiffs' claims under the First Amendment against defendant Peña pass the Rule 50 muster and must be adjudicated by the jury.

■ Finally, we reach defendants' claims of qualified immunity. "Qualified immunity shields government officials performing discretionary functions from civil

---

**2.** Consequently, plaintiffs cannot argue before the jury that they had a protected property interest beyond December 31, 2000.

liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 704 (1st Cir. 1993). In support of their request for immunity on plaintiffs' First Amendment claims for damages, defendants aver that "it is ... unclear whether [plaintiffs] have a right to be recall (sic) *ad infinitum* with Law 52 funds (or with general funds as they contended during oral arguments of the Rule 50 motion)." *See* Defendants' Motion for Judgment as a Matter of Law, docket entry 176, p. 20 (emphasis in original). The Supreme Court reiterated in *Branti v. Finkel,* 445 U.S. 507, 512 n. 6, 100 S.Ct. 1287, 1291 n. 6, 63 L.Ed.2d 574, however, that "[a]fter *Elrod [v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) ], it is clear that the lack of a reasonable expectation of continued employment is not sufficient to justify a dismissal based solely on an employee's private political beliefs." The Court of Appeals held in *Cheveras Pacheco v. Rivera–Gonzalez,* 809 F.2d 125 (1st Cir.1987), that the *Elrod–Branti* doctrine applies to a local government's decision whether to renew the contract of a transitory employee, and later clarified in *Figueroa v. Aponte–Roque,* 864 F.2d 947, 951 (1st Cir.1989) that this is true regardless of whether the employees have been renewed on a regular basis prior to their dismissal or have served only one term. Hence, we think it evident that it was clearly established at least since 1989, and certainly by the time plaintiffs were discharged in 2001, that a municipality may not base a decision not to renew transitory employees' contracts only on the employees' political affiliation, and that a Mayor and a Director of Human Resources of a Puerto Rico municipality should have known it. Defendants, therefore, are not entitled to the protection of qualified immunity on the First Amendment claims.

For the reasons stated above, defendants' Motion for Judgment as a Matter of Law under Fed.R.Civ.P. 50 is GRANTED as to the due process claims and DENIED in all other respects. Accordingly, partial judgment will be entered DISMISSING, with prejudice, plaintiffs' due process claims against defendants Miguel Ruiz–Hernández and Glenda Peña.

SO ORDERED.

## PARTIAL JUDGMENT

For the reasons stated in our Order of this same date, plaintiffs' due process claims against co-defendants Miguel Ruiz–Hernández and Glenda Peña are DISMISSED.

SO ORDERED AND ADJUDGED.