Samuel Lopez QUIÑONEZ,
et als., Plaintiffs

v.

PUERTO RICO NATIONAL GUARD,
et als, Defendants.

Civil No. 04–2187(DRD).

United States District Court,
D. Puerto Rico.

Sept. 29, 2009.

Efrain Maceira–Ortiz, Urb. Perez Morris, San Juan, PR, for Plaintiffs.

Jorge Martinez–Luciano, M.L. & R.E. Law Firm, Hato Rey, PR, Minnella Rivera–Mulero, Federal Litigation Division, San Juan, PR, for Defendants.

### OPINION AND ORDER AS TO JUDGMENT NOTWITHSTANDING THE VERDICT AND REINSTATEMENT

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court are the Puerto Rico National Guard's ("PRNG"), *Motion for Judgment Notwithstanding Verdict* (Docket No. 228), *Plaintiff's Opposition to Motion for Judgment Notwithstanding Verdict* (Docket No. 237), PRNG's *Reply to Plaintiff's Opposition to Defendant's Motion for Judgment Notwithstanding Verdict* (Docket No. 240), Plaintiff's *Response to Motion for Judgment Notwithstanding Verdict* (Docket No. 243), PRNG's *Memorandum of Law on Issues Related to Defendant's Pending Motion for Judgment Notwithstanding Verdict* (Docket No. 258), and *Plaintiff's Response to "Memorandum of Law on Issues Related to Defendant's Pending Motion for Judgment Notwithstanding Verdict"* (Docket No. 263). Also pending before the Court is Plaintiff's request for reinstatement following a verdict in his favor. *See* Docket Nos. 229, 230, 258, 263.

On September 25, 2008, the jury returned a verdict for Plaintiffs (Docket No. 219). The jury found that Plaintiffs had proven by a preponderance of the evidence that Mr. Lopez–Quiñones' political affiliation was a substantial or a motivating factor relating to Defendants' decision to dismiss him from his position as General Services Director of the Puerto Rico National Guard. The jury further found in two specific questions asked, *see e.g.* Docket No. 219, that Defendants had failed to prove by a preponderance of the evidence that there were legitimate non-discriminatory reasons for terminating Plaintiff's employment and that Defendants failed to prove that they would have taken the same employment decision regardless of Plaintiff's political beliefs.

Consequently, Defendants filed the pending motion for judgment notwithstanding the verdict (Docket No. 228, 240, 258), wherein Defendants contend that the evidence presented during the trial does not allow a reasonable jury to infer that Plaintiff's termination was motivated by his affiliation to the New Progressive Party ("NPP"). On the other hand, Plaintiffs' contend that pursuant to the evidence presented during the trial and the governing case law, there is no doubt that a reasonable fact finder could infer that Plaintiff's termination was motivated by his affiliation to the NPP. *See* Docket Nos. 237, 243, 263.

After reviewing the pending motions and the evidence of record, the Court has determined to DENY Defendants' motion for judgment notwithstanding the verdict (Docket No. 228).

## I. APPLICABLE LAW

A motion pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, "may be granted only if a reasonable person, on the evidence presented, could not reach the conclusion that the jury reached." *See Visible Systems Corp. v. Unisys Corp.*, 551 F.3d 65, 71 (1st Cir. 2008) (*citing Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 37 (1st Cir.2006)). "The moving party bears a heavy burden: we will set aside the jury verdict only if 'the evidence, viewed in the light most favorable to [the Plaintiff], points so strongly and overwhelmingly in favor of [the defendants], that a reasonable person could not have arrived at [the reached] verdict.'" *Dixon v. International Broth. of Police Officers*, 504 F.3d 73, 81 (1st Cir. 2007) (*quoting Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 188 (1st Cir.1996)). However, even when drawing all rational inferences from the facts in favor of the Plaintiff, Plaintiff is still not entitled to inferences based on speculation and conjecture. *See Ferrer v. Zayas*, 914 F.2d 309, 311 (1st Cir.1990). Moreover, the Court is prohibited from considering the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence, since these potential controversies belong exclusively to the jury. *See Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 65 (1st Cir.2000); *Katz v. City Metal Co., Inc.*, 87 F.3d 26 (1st Cir.1996) (*citing Richmond Steel, Inc. v. Puerto Rican Ins. Co.*, 954 F.2d 19, 22 (1st Cir.1992)). Thus, the Court is barred from entering into considerations regarding the credibility of witnesses or the weight of the evidence introduced at trial precisely because Rule 50 forbids entering in that domain which belongs exclusively to the jury. *See Alvarez–Fonseca v. Pepsi Cola Bottling Co. of P.R.*, 152 F.3d 17, 23 (1st Cir.1998) cert. denied, 526 U.S. 1123, 119 S.Ct. 1778, 143 L.Ed.2d 806 (1999).

Furthermore, in order for the Court to submit an issue to the jury, the prevailing party at trial opposing a Rule 50 motion must provide " 'more than a scintilla of evidence and may not rely on conjecture or speculation.'" *Segrets, Inc.*, 207 F.3d at 65 (*quoting Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.*, 169 F.3d 43, 53 (1st Cir.1999)). Plaintiffs must have introduced at trial "sufficiently adequate evidence for the jury to determine the plausibility of a particular fact." *Ponce v. Ashford Presbyterian Community Hospital*, 189 F.R.D. 31, 32 (D.P.R. 1999) aff'd, 238 F.3d 20 (1st Cir.2001).

The First Circuit Court of Appeals has been stringent in holding that, under a Rule 50 standard, the district court must "determine whether there are facts and inferences reasonably drawn from those facts which lead to but one conclusion— that there is a total failure of evidence to prove plaintiff's case." *Mayo v. Schooner*

*Capital Corp.*, 825 F.2d 566, 568 (1st Cir. 1987) (emphasis ours). If, on the contrary, a fair minded person could draw different inferences from the evidence presented at trial, the matter must be left for the jury to decide. *See Espada v. Lugo*, 312 F.3d 1, 2 (1st Cir.2002); *Acevedo–Feliciano v. Ruiz–Hernandez*, 275 F.Supp.2d 162, 164 (D.P.R.2003).

## II. ANALYSIS

■ After carefully reviewing the record, the trial transcripts and the evidence presented during trial, the Court finds that Plaintiffs surpassed the threshold of "sufficiently adequate evidence for the jury to determine the plausibility" of their claim that Plaintiff was terminated because of his political affiliation. *Ponce*, 189 F.R.D. at 31. Consequently, Defendant's motion is hereby **DENIED**. The Court explains.

During the trial, the jury was presented evidence to the effect that since the year 2001 Plaintiff, born in Aguadilla, Puerto Rico, raised in New York, a Vietnam veteran, and a recognized adherent of the Progressive New Party ("NPP") by the Defendants[1], had been complaining to Adjutant General, Francisco Marquez, the Human Resources Director, Marimir Martínez[2] and the Executive Director for Administration, Juan E. Colon[3], all appointed to trust positions after the change in Government and members of the Popular Democratic Party ("PDP")[4], about the

1. The Adjutant General, Francisco Marquez testified during the trial that he knew Plaintiff was a member of the PDP. *See* Jury Trial Transcript of September 23, 2008 (Francisco Marquez' Testimony); *see also* Exhibits 25 & 26. Furthermore, evidence was presented as to the fact that Francisco Marquez, Marimir Martinez and Juan E. Colon had either knowledge or had been sent numerous letters by Plaintiff relating to his complaints of being dispossessed of his duties and authority and/or politically discriminated against since the change in Government in 2001. Francisco Marquez openly admitted that he knew that Plaintiff was claiming political discrimination for his affiliation to the NPP. Jury Trial Transcript of September 23, 2008 (Francisco Marquez' Testimony).

2. During Marimir Martinez' testimony she admitted, that while she held the trust position of Human Resources Director, she had knowledge of Plaintiff's complaints of political discrimination and stripping of duties and authority. From this evidence the Jury could have easily inferred that she had knowledge of Plaintiff's political affiliation. *See* Jury Trial Transcript of September 22, 2008 (Marimir Martinez' testimony).

3. During Juan E. Colon's testimony he stated that he started working in the National Guard in 1985 but was relieved of his duties a year and half after the administration changed

from PDP to NPP, under the governorship of Honorable Pedro Rosello. (Juan E. Colon was appointed by the PDP administration, under the governorship of Honorable Rafael Hernandez Colon). He further stated that after he was dismissed he filed a claim alleging among other things that he had been dispossessed of his functions due to the change in government and political discrimination. Nevertheless, by 1999 he had returned to work for the National Guard, as the Executive Director for Administration and after the change in government in 2001 with Governor Sila Maria Calderon, he was appointed to the trust position of Executive Officer for State Affairs. *See* Jury Trial Transcript of September 23, 2008 (Juan E. Colon's Testimony). Furthermore, Plaintiff testified for the record that he knew Juan E. Colon was a member of the PDP because they had talked about it when Mr. Colon returned to work for the National Guard as Executive Director for Administration. *See* Jury Trial Transcript of September 15, 2008 (Samuel López Quiñones' Testimony).

4. During the trial the parties stipulated the political affixes of the defendants, Francisco Marquez, Marimir Martinez, Eva Aponte and Pedro Agosto, as PDP members, with the exception of co-defendant, Samuel Santiago who's political affiliation was not stipulated for record. *See* Jury Trial Transcript September 25, 2008; *see also* Docket No. 240, pg. FN. 3.

fact that Plaintiff, was being stripped of his duties, harassed and discriminated against by his superiors. *See* Jury Trial Transcript of September 15, 16 & 17, 2008 (Samuel López Quiñones' Testimony). The Jury was also presented with numerous letters that had been sent by Plaintiff's attorney Carlos Clausell to the Puerto Rico National Guard and to "La Fortaleza," explaining Plaintiff's working situation after the year 2001. *See Id.; see also* Exhibits 11, 14, 25, 26. Specifically, several letters sent as early as August 14, 2001 and September 18, 2001, stated Plaintiff's claims of "DISCRIMINATION ... [and] POLITICAL HARASSMENT AT EMPLOYMENT." Exhibits 25 & 26. The August 14, 2001 letter, further stated that

> Mr. Samuel Lopez Quiñonez [ ] labor situation remain[ed] worse ... [that] the discriminatory practice of removing all [his] decisional powers [in order] to carry out his functions correctly [were] still taking place, ... [that although] Mrs. Josefa Burgos was appointed as Special Assistant at the Administrative Services Division and Mrs. Eva Aponte as Sub–Director of the General Services Section, ... allegedly in an "interim" manner ... in reality, all decisional power[s] of the Section [were] imparted on [them] ..., thus removing [Mr. Lopez'] functions.

Exhibit 25. Hence, at the latest, by August 14, 2001, Plaintiff's supervisors had knowledge of Plaintiff's claims of political discrimination. Said fact was further corroborated with General Marquez' testimony, wherein he stated the following: "I recall in his letters he outright basically said, hey, I am being politically discrimi-

nated **because of my political affiliation with the New Progressive Party. Yes. So that would tend me to say, yes, that I knew because he had claimed it outright."** *See* Jury Trial Transcript of September 23, 2008 (Francisco Marquez' Testimony) (*emphasis ours* ).

Evidence was further presented as to the fact that Plaintiff continued to subsequently write letters (or send copies of the letters) to the Adjutant General, and Juan Colón, with copies to the Human Resources Director, wherein Plaintiff continued complaining of being dispossessed of his functions, of being humiliated by Josefa Burgos, all under political discrimination and also in violation of the policy regarding Use and Abuse of Authority instituted by the Adjutant General in the year 2003. *See Id.; see also* Exhibits 28, 32, 34, 35, 42.

Testimony was produced as to the systematical conduct of Defendants that although Plaintiff complained numerous times, nothing was done to stop the continuous discriminatory actions against him. *See Id.* On the other hand, Plaintiff testified that Defendants continued to methodically isolate him and strip him of his duties, functions, authority and responsibilities of the career position he held as Director of General Services. *See* Jury Trial Transcript of September 15, 16 & 17, 2008 (Samuel López Quiñones' Testimony). Pursuant to the evidence and testimonies presented during the trial, Plaintiff's position entailed among other things, planning, coordinating, and supervising the activities in the general services section relating to maintenance, property, purchasing [5], transportation, reproduction, inventory, receiving equipment, leasing of establishments, and general administrative services (non

---

**5.** The purchasing of administrative materials was limited by law as to the amount Plaintiff could purchase without proceeding to a formal bidding process. *See Bids Regulations of* the General Services Administration, Regulation No. 5, for the Commonwealth of Puerto Rico.

military equipment) in the entire island of Puerto Rico. *See Id.* Plaintiff was also responsible for the warehouse supervision, where there was one employee and as to the switch board operation, where there was another employee to be supervised. Furthermore, Plaintiff was in charge of the maintenance and care of 12 vehicles of the Puerto Rico National Guard as part of the administrative transportation supervision. *See Id.* Moreover, since he supervised the maintenance and cleaning of the Agency, he had 22 janitors under his supervision. *See Id.* Plaintiff was also responsible for seeing that all National Guard contracts were duly filled and properly registered at the Puerto Rico's Comptroller's Office (but Plaintiff had no responsibility as to the content nor as to the entity the contract was to be awarded). *See Id.*

██ Plaintiff testified that as early as January 2001 the duties inherent to his career position were assigned to Eva Aponte and Josefa Burgos [6], both recently appointed and members of the then governing Popular Democratic Party. *See Id.* The evidence showed that after the change of government, that is as soon as January 11, 2001, Josefa Burgos was appointed to substitute Juan Colon on an interim basis and as coordinator of contracts registry, which originally was part of Plaintiff's duties. *See* Jury Trial Transcript of September 15, 16 & 17, 2008 (Samuel López Quiñones' Testimony); *see also* Exhibits 9, 16. Furthermore, the evidence showed that by that same date, Eva Aponte was appointed deputy director of the general services section and as the Agency's purchasing director, which were also Plaintiff's assigned duties. *See Id.; see also* Exhibit 9. Moreover, evidence was presented as to the fact that Eva Aponte, as purchasing director, was ordered by Juan E. Colon to report directly to him, and in turn the subordinates delegated for purchasing were to report to her, instead of Plaintiff, thereby stripping Plaintiff of further duties and authority. *See* Exhibit 9. The evidence further showed that by June 4, 2001, Plaintiff was stripped of additional duties pertaining to the annual vacation and sick leave of all the general services employees, who were to subsequently request the approval for said leave from Josefa Burgos. *See* Exhibit 20. Furthermore, by June 28, 2001 Eva Aponte was officially appointed the supervisor of all of the Maintenance and Transportation Employees, who up to then were to report directly to Plaintiff.[7] Said order was imparted by Josefa Burgos though an email which specifically stated that "BY INSTRUCTIONS OF MRS. JOSEFA BURGOS, [ ] MRS. EVA APONTE WILL BE THE ONE IN CHARGE OF SUPERVISING MAINTENANCE AND TRANSPORTATION EMPLOYEES." Exhibit 20. The evidence narrated clearly showed how Plaintiff was systematically stripped of all his duties and authority as Director of General Services. Evidence was also presented as to the fact that during a meeting held on April 5, 2001, Juan E. Colon informed various employees, including Plaintiff, that Eva Aponte as Sub–Director of the General Services area, was to be paid a differential in salary of $435.00 per month, which resulted in being

---

6. Plaintiff during his testimony identified Josefa Burgos as being a member of the Popular Democratic Party. Said fact was not controverted. Eva Aponte's affiliation to the PDP was stipulated. *See* FN 4.

7. "The temporal proximity between a change in political administrations and an adverse employment action is relevant to the issue of whether political affiliation was a substantial or motivating factor in the adverse employment decision." *Peguero–Moronta v. Santiago,* 464 F.3d 29, 53 (1st Cir.2006).

a superior pay than what Plaintiff was being paid. *See* Jury Trial Transcript of September 15, 16 & 17, 2008 (Samuel López Quiñones' Testimony); *see also* Exhibit 18. Plaintiff testified and evidence was presented as to the fact that after that meeting, Plaintiff sent an email to the Adjutant General informing him as to what had transpired during the meeting. The email informed that Eva Aponte was being paid a differential in salary of $435.00, that she was appointed sub-director without following the due process of the Personnel Law and that she did not possess the required academic preparation nor the required experience for the position. *See Id.* Said evidence clearly demonstrated to the Jury how a member of the PDP, who in theory was appointed to a lower position than Plaintiff, was conferred Plaintiff's duties and authority as well as a higher salary than Plaintiff, all in less than six months after the change in government. On June 21, 2002, via an email sent by Josefa Burgos, Plaintiff was further stripped of duties and authority with regards to the endorsements of the public liability policy for a Recruitment Activity that was to be carried out by the National Guard. Josefa Burgos informed Plaintiff that any correspondence in response to communications issued by Juan E. Colon with the General Insurance Accounts Executive "should be directed to the Executive Director and not to other people." Exhibit 31. Plaintiff responded that if he could not be provided any information as to said insurance carrier, it made no sense then to place in all the letters sent to the insurance if they had any doubts, to please contact Mr. Samuel Lopez. *See Id.* Plaintiff further informed "that since [he did] not have any authority to receive necessary information, which ... [he viewed as being stripped of his functions], [he was therefore] not [going to] hold [him]self accountable in the event of any negligence."

Exhibit 31. Moreover, Plaintiff further stated that he was thereby making it clear that he was relinquishing this responsibility to the person who made the decision of stripping his authority to receive any necessary insurance information (Plaintiff had no authority, however to contract with any entity). *See Id.*

The jury also heard testimony as to the fact that Plaintiff had always had a good attendance record; that the only occasions in which he was absent was due to medical reasons which, pursuant to his testimony were caused by Defendants harassment and discrimination; that he was only provided with one raise, as Defendant in reality was forced to provide him a merit raise, while others like Eva Aponte received several monetary raises. *See* Jury Trial Transcript of September 15, 16 & 17, 2008 (Samuel López Quiñones' Testimony).

The Jury also heard testimony as to the fact that Plaintiff was deprived of his PRIFA system password to verify that the contracts were being properly registered with the Comptroller's Office or the work that was being performed by the employees he used to supervise, before being stripped of his authority. *See* Exhibits 33, 40 & 64. Testimony was further heard as to the fact that Plaintiff was not permitted to attend trainings as to Puerto Rico National Guard emergency procedures and regulations pertaining to the transportation services which was under Plaintiff's duties and authority as Director of General Services. Instead, Eva Aponte was authorized to attend. *See* Jury Trial Transcript of September 15, 16 & 17, 2008 (Samuel López Quiñones' Testimony); *see also* Exhibit 22.

Furthermore, Plaintiff testified that he was forced to sign an affidavit regarding the filing of several contracts with the Comptroller's Office, despite the fact that he did not want to certify that information

because the employee in charge of registering the contracts, Pedro Agosto, was not under his supervision, as the person who had control over the area was Josefa Agosto, *see e.g. See* Jury Trial Transcript of September 22, 2008 (Marimir Martinez' Testimony). Moreover, Plaintiff testified that before he was forced to sign the document he informed the Comptroller's Office and the Executive Officer for State Matters, Juan Quiñones Silva, that he could not sign the certification. Nevertheless, Juan Quiñones Silva informed Plaintiff that should he not sign the document he would be disciplined. *See* Jury Trial Transcript of September 15, 16 & 17, 2008 (Samuel López Quiñones' Testimony). The evidence further showed that after Pedro Agosto passed away the PRNG officials looked into his desk and discovered that Agosto had not registered the PRNG contracts with the Comptroller's Office for over a year. Afterwards, Defendants filed disciplinary charges against the Plaintiff for signing the affidavit regarding the filing of the contracts, for not making sure that the contracts had been in fact registered with the Comptroller's Office and for an alleged absenteeism pattern between January and May of 2004. Notwithstanding, the evidence presented clearly showed that he had been forced to sign the affidavit by Juan Quiñones Silva, he had been prior thereto stripped of his supervisory authority, he had been stripped of his password to supervise the contracts and he had a good attendance record. *See Id.; see also* Exhibit I. Pursuant to Plaintiff's testimony, said unfounded charges were the reasons for his termination from the career position he had held for seven (7) years as Director or General Services of the Puerto Rico National Guard. *See* Exhibits 1 & I.

The documentary evidence further showed that according to the written National Guard Manual of Disciplinary Measures, termination is the last applicable disciplinary sanction; that with the exception of serious offenses, a progressive discipline must be followed; that prior to Plaintiff's termination, he had not been admonished nor received any warnings in his personnel record; that Plaintiff's evaluations, which were performed by former co-defendant Juan E. Colon, prior to the formulation of charges, were good. *See* Jury Trial Transcript of September 15, 16 & 17, 2008 (Samuel López Quiñones' Testimony). Furthermore, Plaintiff testified that Samuel Santiago, whom he new as being a member of the Popular Democratic Party and was hired in 2004 to take over Pedro Agosto's position, ended up replacing Plaintiff after his termination. *See Id.*[8]

The Adjutant General, Francisco Marquez, Juan E. Colon and Marimir Martinez all testified that they had met to decide the course of action as to Plaintiff's complaints. *See* Jury Trial Transcript of September 22, 2008 (Marimir Martinez' Testimony); *see also* Jury Trial Transcript of September 23, 2008 (Juan E. Colon's Testimony). Nevertheless, the evidence showed that nothing was done by them as to Plaintiff's plight of slowly being stripped of all his regular duties and authority. *See Id.* Notwithstanding having received several written notices as to Plaintiff being the object of political discrimination. The evidence provided the jury with facts regarding Francisco Marquez' knowledge of Plaintiff's working situation and constant complaints. *See Id.; see also* Jury Trial Transcript of September 23, 2008 (Juan E. Colon's Testimony);

---

8. Regardless of who was appointed to replace Plaintiff, most of his duties were reassigned to Eva Aponte, stipulated to be affiliated to the PDP. *See* FN. 9 as to all duties assigned to Eva Aponte.

Jury Trial Transcript of September 23, 2008 (Francisco Marquez' Testimony).

In fact, as aforementioned Francisco Marquez admitted that he had knowledge of not only Plaintiff's political affiliation, but of all of Plaintiff's complaints. *See* Jury Trial Transcript of September 23, 2008 (Francisco Marquez' Testimony). He further stated that he had met with Plaintiff for the first time after previously having had three years of knowledge of Plaintiff's complaints. *See Id.* Plaintiff testified that the meeting did not come out as an initiative of Marquez, but rather it took place after the Plaintiff—tired of waiting for a response to his complaints from Marquez—visited his office and decided to wait there until Marquez finally received him. Plaintiff further testified that after personally informing Marquez of his working situation, pertaining to the deprivation of his duties and authority, the political discrimination and harassment he was suffering and also the violation of the "policy regarding abuse of authority" instituted by Marquez, the only response he received from Marquez was: "What do you want me to do." *See* Jury Trial Transcript of September 15, 16 & 17, 2008 (Samuel López Quiñones' Testimony); *see also* Exhibit 39.

Moreover, Plaintiff testified that Marquez utterly failed in ordering any type of investigation, much less ordering a neutral one (the alleged political harassers dealt with Plaintiff's complaints themselves), regarding Plaintiff's complaints; that after Plaintiff had met with Marquez the situation remained unaltered. *See Id.; see also* Jury Trial Transcript of September 22, 2008 (Marimir Martinez' Testimony). Pursuant to the aforementioned evidence, the Jury could have easily inferred that Marquez not only knew but refused to act knowing the grievance and further condoned Plaintiff's unfavorable working situation. Furthermore, Plaintiff specifically attested, without evidentiary contradiction, that his affiliation to the NPP was known by everyone with authority, see e.g. FN. 4, and that everyone that was hired after the change in government, were all PDP members.

The Court, after carefully reviewing the evidence presented during trial, finds that the evidence on the record clearly allows for a reasonable fact finder to infer that Plaintiff's termination was motivated by his political affiliation. *See Rodriguez–Pinto v. Tirado–Delgado*, 982 F.2d 34, 40 (1st Cir.1993).

The evidence that was presented to the Jury clearly showed that immediately after the change in Government, Plaintiff, a known NPP member, was methodically stripped of all his duties and authority by his newly appointed supervisors who were PDP members.[9] The evidence further

---

9. For example, Plaintiff was stripped of his duties and authority as follows:
   - Eva Aponte was appointed as deputy director of the general services section and as the Agency's purchasing director;
   - Eva Aponte was ordered to report directly to Juan E. Colon, instead of Plaintiff.
   - The subordinates delegated for purchasing were order to report to Eva Aponte instead of Plaintiff.;
   - Plaintiff was stripped of duties pertaining to the annual vacation and sick leave of all the general services employees, who were to subsequently request the approval for said leave from Josefa Burgos, instead of Plaintiff.
   - Eva Aponte was officially appointed the supervisor of all of the Maintenance and Transportation Employees, who up to then were to report directly to Plaintiff;
   - During a meeting held on April 5, 2001, Juan E. Colon informed various employees, including Plaintiff, that Eva Aponte as Sub-Director of the General Services area, was to be paid a differential in salary of $435.00 per month, which resulted in being a superior pay than what Plaintiff was being paid;

showed that since he was stripped of his duties and authority, Plaintiff was unable to adequately perform his job as Director of General Services, which in turn was pretextually and ironically used as a reason for his termination. Furthermore, although Plaintiff's termination was also based on the fact that he had signed an affidavit certifying that several contracts had been filed with the Comptroller's Office when in reality they were not, evidence was presented as to the fact that Plaintiff had been obligated through duress by his superiors to sign the document and so the jury reasonably believed that his termination was politically motivated. Moreover, any evidence presented by the Defendant in order to show that there was a non-discriminatory reason for the adverse employment action and that the Defendant would have taken the same action without regard to Plaintiff's' political affiliation, was provided no weight or negligible weight by the Jury when considering the evidence presented by the Plaintiff as whole which showed that the charges which caused his termination were fabricated by the Defendants. What is more, the Jury specifically rejected Defendants' contentions that they would have taken the same decision regardless of Plaintiff's' political beliefs. *See* Docket No. 219. Hence, as aforementioned, the evidence on the record clearly allows for a reasonable fact finder to infer that Plaintiff's termination was motivated by his political affiliation.

■ As to Plaintiff's request for reinstatement, which after the extensive litigation in this case is the only remedy available at Plaintiff's disposal, the Court, after reviewing the applicable case law, finds that it is authorized and will order plaintiff, Samuel López Quiñones' reinstatement to the position he held before being terminated from the Puerto Rico National Guard, or in the alternative to a similar or equal position.

> Although not a presumptive entitlement in a section 1983 case, ... we recognize that reinstatement may offer significant deterrent and curative value in appropriate cases. "If an employer's best efforts to remove an employee for unconstitutional reasons are presumptively unlikely to succeed, there is, of course, less incentive to use employment decisions to chill the exercise of constitutional rights."

*Hiraldo–Cancel v. Aponte,* 925 F.2d 10, 13 (1st Cir.1991)(*quoting Allen v. Autauga County Bd. of Educ.,* 685 F.2d 1302, 1306 (11th Cir.1982)). The Court finds that reinstatement is the appropriate remedy, albeit the only equitable remedy, since Plaintiff is a member of the now governing NPP party, and therefore further political discrimination is unlikely upon his reinstatement. Furthermore, the only equitable way to make Plaintiff whole is to reinstate him immediately, pay for his salary and other related benefits, since the Judgment date, and allow him to work sufficient years to earn a retirement.

● Plaintiff was further stripped of duties and authority by Josefa Burgos, with regards to the endorsements of the public liability policy for a Recruitment Activity that was to be carried out by the National Guard;

● Plaintiff was deprived of his PRIFA system password to verify that the contracts were being properly registered with the Comptroller's Office or the work that was being performed by the employees he used to supervise;

● Plaintiff was not permitted to attend trainings as to Puerto Rico National Guard emergency procedures and regulations pertaining to the transportation services which was under Plaintiff's duties and authority as Director of General Services. Instead, Eva Aponte was authorized to attend.

Furthermore, in a recently published case, the First Circuit Court of Appeals affirmed the District Court of Puerto Rico, wherein the Court had ordered Plaintiffs' reinstatement, holding that

"consistent with the Eleventh Amendment ... federal courts may, notwithstanding the absence of consent, waiver or evidence of congressional assertion of national hegemony, enjoin state officials to conform future conduct to the requirements of federal law." *Lane v. First Nat'l Bank of Boston*, 871 F.2d 166, 172 n. 5 (1st Cir.1989) (internal quotation marks and citation omitted). **This rule includes ordering reinstatement.** *Nelson v. Univ. of Tex.*, 535 F.3d 318, 321–22, 324 (5th Cir.2008).

*Negron–Almeda v. Santiago*, 579 F.3d 45 (1st Cir.2009). Moreover, since "[a] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office," Adjutant General Marquez is to be substituted in the instant case with the newly appointed Adjutant General of the National Guard. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Consequently, the newly appointed Adjutant General of the National Guard is hereby ordered to reinstate Plaintiff effective **October 13, 2009.**[10]

### III. CONCLUSION

Therefore, for reasons stated herein, Defendant's *Motion for Judgment Notwithstanding Verdict* (Docket No. 228), is hereby **DENIED.** Furthermore, Defendants are hereby ordered to reinstate Plaintiff on or before **October 13, 2009,** to the position he held before being terminated from the Puerto Rico National Guard, or in the alternative to a similar or equal position.

**IT IS SO ORDERED.**

---

**10.** The Court does not agree with the analysis of the cases cited by Defendants, *see e.g.* Docket Nos. 230, 258, which according to Defendant impede Plaintiff's reinstatement in a case where the Adjutant General, the highest executive, and its principal executive, Juan E. Colon, knew that Plaintiff, a NPP affiliate, was being politically harassed, failed to take any action whatsoever even to the extent of failing to order an investigation involving neutral parties. Especially, when Plaintiffs principal duties had been transferred to Eva Aponte, a stipulated PDP affiliate. Furthermore, the Adjutant General accepted that he knew since receiving Plaintiff's letters, of August 14, 2001 and September 18, 2001, years prior to his termination in 2005, *see e.g.* Docket Nos. 1 & I, that Plaintiff, a NPP affiliate, was being harassed.